# EXHIBIT 1

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1          IN THE UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                  EASTERN DIVISION
 4
 5   KATRINA DOUGLAS,                  )
 6                  Plaintiff,         )
 7      -vs-                           ) No. 07 C 6773
 8   CERTEGY PAYMENT RECOVERY          ) Judge Bucklo
 9   SERVICES, INC.,                   )
10                  Defendant.         )
11
12          The deposition of KATRINA DOUGLAS, called
13   for examination, taken pursuant to the Federal Rules
14   of Civil Procedure of the United States District
15   Courts pertaining to the taking of depositions, taken
16   before V. LINDA BOESCH, a Notary Public within and
17   for the County of DuPage, State of Illinois, and a
18   Certified Shorthand Reporter, CSR No. 84-3108, of
19   said state, at Suite 4400, 77 West Wacker Drive,
20   Chicago, Illinois, on the 28th day of February, A.D.
21   2008, at 1:00 p.m.
22
23
24                                     ORIGINAL
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   PRESENT:

 2         LEGAL HELPERS, P.C.,

 3         (20 West Kinzie Street, Suite 1300,

 4         Chicago, Illinois 60610,

 5         866-339-1156), by:

 6         MR. RICHARD J. MEIER,

 7             appeared on behalf of the Plaintiff;

 8

 9         McGUIRE WOODS, LLP,

10         (77 West Wacker Drive, Suite 4400,

11         Chicago, Illinois 60601,

12         312-849-8100), by:

13         MS. AMY R. JONKER,

14             appeared on behalf of the Defendant.

15

16   ALSO PRESENT:

17         MR. RICHARD WEINMAN, via telecommunications

18             Certegy Payment Recovery Services, Inc.

19

20

21

22

23   REPORTED BY:  V. LINDA BOESCH, CSR No. 84-3108.

24
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1                    (WHEREUPON, the witness was duly

 2                    sworn.)

 3                 KATRINA DOUGLAS,

 4  called as a witness herein, having been first duly

 5  sworn, was examined and testified as follows:

 6                 EXAMINATION

 7  BY MS. JONKER:

 8      Q.    Would you please state your name for the

 9  record?

10      A.    Katrina Douglas.

11      Q.    Do you go by any other names besides

12  Katrina Douglas?

13      A.    Trina.

14      Q.    Have you ever had any other names besides

15  Katrina Douglas?

16      A.    No.  Besides my maiden name, Taylor.

17      Q.    Katrina Taylor?

18      A.    Yes.

19      Q.    Okay.  Ms. Douglas, I want to show you

20  what I'm marking as Exhibit A.

21                    (WHEREUPON, a certain document

22                    was marked Deposition Exhibit No.

23                    A, for identification, as of

24                    2-28-08.)
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1                    (WHEREUPON, the document was

2                    tendered to the witness.)

3   BY MS. JONKER:

4        Q.    Let me represent to you that this is a

5   copy of the electronic docket for the United States

6   Bankruptcy Court for the Northern District of

7   Illinois.

8              Do you see your name at the top there?

9        A.    Yes.

10       Q.    And this is for your bankruptcy petition,

11  correct?

12       A.    Yes.

13       Q.    Now, if you open up to the third page, I

14  represent to you that this is your bankruptcy

15  petition, is that right?

16       A.    Yes.

17       MR. MEIER:  Have you seen this before?

18       MS. JONKER:  I'm sorry.  Could you hold just a

19  moment, please.

20                   (WHEREUPON, there was a short

21                   interruption for the telephone.)

22       MS. JONKER:  For the record, on the phone I

23  have Richard Weinman.  He's a representative of

24  Defendant, Certegy.  He'll just be listening in.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1  BY MS. JONKER:

2       Q.    Let me go back to what we were saying.

3  You recognize this as your bankruptcy petition?

4       A.    Yes.

5       Q.    And if you turn to that orange tab that's

6  marked there, this is Schedule F of your bankruptcy

7  petition.

8             Do you understand that this is where you

9  list the creditors that you owe money to?

10      A.    Yes.

11      Q.    Okay.  And you're supposed to list all

12 your creditors here, correct?

13      A.    Yes.

14      Q.    Okay.  And if you look -- if you turn

15 over one page there, you'll see at the bottom, the

16 bottom two entries, those are the checks that are at

17 issue -- I'm sorry.  I think you have to turn one

18 more page, actually.

19            Those bottom two entries, those are the

20 checks that are at issue in this lawsuit, correct?

21      MR. MEIER:  The Majestic Star's?

22      MS. JONKER:  Yes.

23 BY MS. JONKER:

24      Q.    They are for $225 apiece, is that right?

1       A.    Yes.

2       Q.    Okay.  And is it your understanding,

3  Ms. Douglas, that you're supposed to disclose all

4  your assets on your bankruptcy petition?

5       A.    Yes.

6       Q.    And did you do that?

7       A.    To the best of my knowledge.

8       Q.    Did you disclose everything, all your

9  assets?

10      A.    Yes, to the best of my knowledge.

11      Q.    You signed this bankruptcy petition,

12  correct?

13      A.    Yes.

14      Q.    And you signed it under penalty of

15  perjury?

16      MR. MEIER:  Where's the signature?

17      MS. JONKER:  The signature is on Page 3.  It's

18  back here at the beginning.  You have to go to

19  Page 3.  Go one more, one more.

20  BY MS. JONKER:

21      Q.    Do you see your name here at the top

22  under "Signature"?

23      A.    Yes.

24      MR. MEIER:  I don't see her signature.  Do you

```
 1  have a signature?
 2          MS. JONKER:  This is an electronic copy.
 3  BY MS. JONKER:
 4          Q.    That's your electronic signature, isn't
 5  it?
 6          MR. MEIER:  May I clarify it with her?
 7          MS. JONKER:  We have a question pending, so...
 8          MR. MEIER:  Okay.
 9  BY MS. JONKER:
10          Q.    Did you sign this bankruptcy petition,
11  Ms. Douglas?
12              Did you authorize someone to file this
13  bankruptcy petition for you?
14          A.    Yes, I did.
15          Q.    Who did you authorize?
16          A.    The attorney of Ernesto Borges.
17          Q.    And did you meet with him?
18          A.    I met with the law firm, yes.
19          Q.    Okay.  And did you sign the bankruptcy
20  petition when you met with him?
21          A.    Yes.
22          Q.    Okay.  And did you sign it under penalty
23  of perjury?
24          A.    Yes.
```

1    Q.    Okay.

2    MR. MEIER:  Are you sure you signed it under

3 penalty of perjury?

4    THE WITNESS:  Meaning?

5 BY MS. JONKER:

6    Q.    Look right there.  Do you see this?  It

7 says that you're signing under penalty of perjury.

8 Do you see this paragraph with your signature below

9 it (indicating)?

10    A.    Uh-huh.

11    MR. MEIER:  I just want to make sure that she

12 understands what she --

13    MS. JONKER:  Sure.  Understands the term

14 "perjury"?

15    MR. MEIER:  Correct.

16    MS. JONKER:  Sure.

17 BY MS. JONKER:

18    Q.    Go ahead.  Take a moment and read the

19 paragraph.

20    A.    Okay.

21    Q.    And you did sign this bankruptcy

22 petition, correct?

23    A.    Yes.

24    Q.    Okay.  And you understand that you were

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1  supposed to disclose all your assets and all your
 2  debts on this bankruptcy petition, correct?
 3       A.    Correct.
 4       Q.    And that's what you did, correct?
 5       A.    To the best of my knowledge.
 6       Q.    You didn't hide anything, you didn't hold
 7  anything back?
 8       A.    To the best of my knowledge, no.
 9       Q.    Because that would be dishonest to do
10  that, wouldn't it?
11       A.    Yes.
12       Q.    Where on this bankruptcy petition did you
13  disclose your FDCPA lawsuit?
14       A.    That wasn't disclosed.
15       Q.    You didn't disclose it on your bankruptcy
16  petition?
17       A.    No.
18       Q.    Why not?
19       A.    I just learned about that far as the
20  extent of the lawsuit.
21       Q.    You just learned about the extent of the
22  lawsuit?
23       A.    Yes.
24       Q.    When did you file this bankruptcy
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    petition?

2         A.    February the 1st.

3         Q.    Of what year?

4         A.    2008.

5         Q.    So that was at the beginning of this

6    month?

7         A.    Yes.

8         Q.    Do you know when you filed this lawsuit?

9         A.    Can I speak with my attorney?

10        Q.    No, the question's pending.  Unless you

11   want to have an open discussion right here.

12              Do you know?

13        MR. MEIER:  I think the complaint speaks for

14   itself when it was filed.

15        MS. JONKER:  I want to know what she knows.

16   BY MS. JONKER:

17        Q.    Do you know when you filed this lawsuit?

18        A.    Last year I called my bankruptcy attorney

19   at the time.

20        Q.    Which was who?

21        A.    Which was Legal Helpers.

22        Q.    Was your bankruptcy attorney?  Legal

23   Helpers was your bankruptcy attorney?

24        A.    I had attained them.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    Q.    You retained them?

2    A.    Last year.

3    Q.    To do what?

4    A.    For bankruptcy.

5    Q.    To file bankruptcy for you?

6    A.    Yes.

7    Q.    But you didn't actually use them to file

8    bankruptcy?

9    A.    Correct.

10   Q.    You hired this other attorney?

11   A.    Correct.

12   Q.    And did you tell that other attorney

13   about this lawsuit?

14   A.    No, I didn't, because I just learned

15   about the lawsuit.

16   Q.    When did you learn about the lawsuit

17   exactly?

18   A.    I can't recall the date.

19   Q.    Was it before you filed your bankruptcy

20   petition or after?

21   A.    After.

22   Q.    So you're telling me that you filed this

23   bankruptcy petition on February 1 of this year, less

24   than a month ago, and you didn't find out about this

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    lawsuit until after you filed this bankruptcy

2    petition?

3         A.    To the best of my knowledge.

4         Q.    Are you telling me that your attorney

5    sitting right here filed this lawsuit without your

6    knowledge?

7         A.    To the best of my knowledge.

8               Can I talk with my attorney now?

9         Q.    You're in the middle of a deposition,

10   Ms. Douglas.

11              When you talked to your bankruptcy

12   attorney, you're telling me when you talked to

13   Mr. Borges, you did not know that you had an FDCPA

14   lawsuit pending?

15        A.    That's correct.

16        Q.    You had no idea that you had any lawsuit

17   pending regarding the FDCPA or these checks?

18        A.    That's correct.

19        MR. MEIER:   She -- may I interject?

20   Ms. Douglas retained us to pursue her FDCPA claim

21   when she retained Legal Helpers.   There was two

22   separate retainer agreements.

23   BY MS. JONKER:

24        Q.    When did you first retain Legal Helpers?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1       A.      Last year.  I don't recall the date.

2       Q.      And you told me earlier that you retained

3  them to file bankruptcy for you?

4       A.      To file bankruptcy, correct.

5       Q.      And then did you retain them a second

6  time as well?

7       A.      No.

8       Q.      You only retained them once?

9       A.      Yes.

10      Q.      Did you pay them anything?

11      A.      A hundred dollars.

12      Q.      Did you sign any kind of engagement

13  agreement?

14      MR. MEIER:  I don't --

15      MS. JONKER:  There's a question pending.

16  BY MS. JONKER:

17      Q.      Did you sign an engagement agreement with

18  them?

19      A.      With Legal Helpers to represent me for

20  bankruptcy?

21      Q.      Yes.

22      A.      Yes.

23      Q.      And what were the terms of your

24  engagement agreement?  Meaning, when you signed this

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   engagement agreement with Legal Helpers, were you
 2   paying them by the hour or were you paying them --
 3        A.     I just put down a hundred dollars
 4   retainer fee.
 5        Q.     And do you owe them anything else besides
 6   the $100?
 7        A.     No longer.  They no longer represent me
 8   for bankruptcy.
 9        Q.     Okay.  But they represent you in this
10   lawsuit, correct?
11        A.     Correct.
12        Q.     Okay.  When you paid them the $100, what
13   was that for?  Was that to represent you in
14   bankruptcy?
15        A.     Correct.
16        Q.     And now for this lawsuit, did you retain
17   them again separately?
18        A.     No, I didn't retain them again
19   separately.
20        MR. MEIER:  I want you to correct -- you did
21   sign a retainer agreement with us for FDCPA.  You
22   did.
23   BY MS. JONKER:
24        Q.     When did you sign that agreement?
```

1          MR. MEIER:  It was --

2          MS. JONKER:  She, apparently, has no

3    recollection of this.  I'd like to hear from her.

4    This is her deposition.

5    BY MS. JONKER:

6          Q.     Did you sign a retainer agreement or an

7    engagement agreement with Legal Helpers for this

8    lawsuit, this FDCPA lawsuit?

9               While you're thinking about that, let me

10   ask you another question.  When did you decide not to

11   use Legal Helpers in your bankruptcy?

12         A.     When I obtained this law firm, Ernesto --

13         Q.     When did you retain this other law firm,

14   Borges?

15         A.     I can't recall the exact date.

16         Q.     Why did you decide to retain a different

17   law firm?

18         A.     I wasn't happy with Legal Helpers

19   represent me for bankruptcy.

20         Q.     Why?

21         A.     Too many attorneys.  I like to deal with

22   one, one attorney.

23         Q.     And did you get to do that at Borges?

24   You dealt with just one attorney?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        A.      Yes.

2        Q.      But you continued your relationship with

3   Legal Helpers?

4        A.      I just resumed my relationship with Legal

5   Helpers.

6        Q.      When did you resume it?

7        A.      As far as communication.

8        Q.      Anything.  When did you resume your

9   relationship with Legal Helpers?

10       A.      I'm trying to think if it was after I got

11  the attorney, the new attorney, for the bankruptcy.

12  It had to have been the month of February.  I don't

13  have the exact date.

14       Q.      When you resumed your relationship with

15  Legal Helpers, did you tell them that you had filed

16  for bankruptcy?

17       A.      Yes.

18       Q.      When did you tell them that?

19       A.      When I found out more of communications

20  about the FS --

21       MR. MEIER:  FDCP.

22  BY THE WITNESS:

23       A.      FDCP.

24  BY MS. JONKER:

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      When was that?

2      A.      The month of February.

3      Q.      Which day?

4      A.      I don't have the exact date.

5      Q.      Was it the first week of February?  The

6  second week of February?

7              Because today is February 28.  So we're

8  at the very end of the month.  So this is just the

9  last couple of weeks we're talking about.

10     A.      Had to have been the first week of

11  February, possible the end of January.

12     Q.      So it was end of January or the first

13  week of February that you started communicating with

14  Legal Helpers about this lawsuit?

15     A.      Correct.

16     Q.      And before that, when was the last time

17  you spoke to Legal Helpers?

18     A.      I haven't.

19     Q.      You said you had previously retained them

20  to represent you in a bankruptcy, correct?

21     A.      That was last year, correct.

22     Q.      When last year?

23     A.      I'm going to say the summer of last year.

24     Q.      Okay.  Can you give me an idea?  Was it

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   early summer, like May or June?  Was it the end of
 2   the summer, August?  September?
 3        A.    I'm going to say maybe July.
 4        Q.    Okay.  That's when you first retained
 5   Legal Helpers to represent you in bankruptcy is July
 6   of last year, 2007?
 7        A.    I have a receipt, but I don't know the
 8   date.
 9        Q.    You have a receipt for your $100?
10        A.    Yes, I do.
11        Q.    And how many times did you talk to them
12   after you first retained them?  Did you have just one
13   conversation with them or did you talk to them
14   several times?
15        A.    Several times.
16        Q.    Okay.  Give me an idea of when those
17   conversations occurred.
18        A.    See, after I first retained them, I'm
19   going to say maybe three times after I gave them a
20   hundred dollars deposit.
21        Q.    Okay.  And when did you contact them or
22   talk to them on three occasions?  Approximately when
23   was that?  Like, give me an idea of the month.
24              You retained them in July.  You spoke to
```

1    them then.    When was the next time you talked to

2    them?

3         A.    Maybe sometime in the month of July,

4    again in August.    And those are the only times that I

5    can remember.    Maybe the month of July and August,

6    three times.

7         Q.    When did you tell Legal Helpers that you

8    didn't want them to represent you in your bankruptcy

9    filing?

10        A.    I didn't.

11        Q.    You didn't ever tell them that?

12        A.    No, not until I obtained this attorney.

13        Q.    You said that you retained this other

14   attorney, Borges, when?

15        A.    January.

16        Q.    January of this year?

17        A.    Yes.

18        Q.    So you never said anything to Legal

19   Helpers.    You just went and got Borges instead?

20        A.    Correct.

21        Q.    And in January, Legal Helpers hadn't done

22   anything on your bankruptcy petition?

23        A.    No.

24        Q.    Had they done anything about your

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   lawsuit?
 2        A.    Not that I know of.  Until just now.
 3   Until the end of January that I learned more about
 4   this lawsuit.
 5        Q.    When was the first time you learned about
 6   this lawsuit?
 7        A.    January.
 8        Q.    January of this year is the first time
 9   you ever heard of this lawsuit?
10        A.    Correct.
11        Q.    You didn't know anything had been filed?
12        A.    No.
13        Q.    When you spoke to Legal Helpers about
14   this lawsuit in January, did you tell them that you
15   were planning to file for bankruptcy through another
16   attorney?
17        A.    I did let Richard know.
18        Q.    And did you tell the other attorney,
19   Borges, about the lawsuit?
20        A.    Just now.  They just know about it now.
21   I just found out about it.
22        Q.    When you say "now," what do you mean?
23   You mean January?
24        A.    This year, yes.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      So when you contacted Borges in January,
2  you said, "Okay.  I have this lawsuit going with
3  Legal Helpers"?
4      A.      No.
5      Q.      When did you tell Borges about the
6  lawsuit?
7      A.      When I just found out about it.
8      Q.      Which was January you said?
9      A.      I'm trying to get my dates right.
10 January or -- it had to have been January, yes.
11     Q.      Because you filed this bankruptcy
12 petition on February 1, correct?
13     A.      Correct.  That's when I signed it.
14     Q.      Okay.  And so you're telling me that in
15 January of 2008, before you filed this bankruptcy
16 petition, you told your attorney, Mr. Borges, about
17 this lawsuit?
18     A.      At the time I found out about this
19 lawsuit, I was in the middle of attaining them.  I
20 had attained them.
21     Q.      You're referring to Mr. Borges?
22     A.      Yes.
23     Q.      Okay.  So you retained Mr. Borges for
24 your bankruptcy petition in January of 2008?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      A.     When I first attained them, I didn't know

2  anything more about the lawsuit that's pending.

3      Q.     Okay.  And then after you retained them,

4  you found out about the lawsuit, is that right?

5      A.     That is correct.

6      Q.     Okay.  And then did you tell Mr. Borges

7  about the lawsuit?

8      A.     I didn't tell Mr. Borges, but the

9  counsels filing my petition for the bankruptcy, I

10 told her about it.

11     Q.     Who is that?

12     A.     I know her name is Molly.

13     Q.     And does she work for Mr. Borges?

14     A.     Yes.

15     Q.     Do you know what her last name is?

16     A.     No, I don't have the last name.

17     Q.     And you told her about your FDCPA lawsuit

18 with Legal Helpers?

19     A.     Yes.

20     Q.     And what did she say?

21     A.     She really didn't say anything.

22     Q.     She had no response at all?

23     A.     I mean, she didn't really say anything.

24 I could still go forward with my bankruptcy.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    Q.    At that point when you told Molly about

2  your lawsuit, had the bankruptcy petition already

3  been filed?

4    A.    Yes.

5    Q.    What day did you talk to Molly?

6    A.    I don't have the exact date.

7    Q.    It was in February or January?

8    A.    It have to have been February.

9    Q.    So it was after you filed your bankruptcy

10  petition, you told Molly who works for Mr. Borges

11  that you had this lawsuit with Legal Helpers, is that

12  right?

13    A.    That is correct.  I do believe that is

14  correct because everything was so close together.

15    Q.    Okay.  How close together?

16    A.    Like a week, maybe.  Everything happened

17  just so fast at the same time.

18    Q.    So you found out about this lawsuit that

19  we are here for today and within approximately a

20  week, you filed your bankruptcy petition.  Is that

21  what you're telling me?

22    A.    My bankruptcy petition was filed before I

23  found out about the lawsuit.

24    Q.    Now, what you told me earlier is that you

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    found out about the lawsuit in January.  Isn't that

2    what you said?

3         A.    The end of January, beginning of

4    February.

5         Q.    You're not sure?  Because you said a

6    little while ago, you were pretty sure that it was

7    end of January.

8         A.    It's so close together.  It's so close

9    together.

10        Q.    So you didn't tell Mr. Borges about this

11   lawsuit until after you filed your bankruptcy

12   petition, correct?

13        A.    The bankruptcy petition was filed before

14   I knew more about this lawsuit.

15        Q.    When you say "knew more about this

16   lawsuit," what do you mean "more"?  You knew

17   something about it?

18        A.    Actually, before I knew.  I knew I filed

19   the complaint, but I didn't know it was being

20   pursued.

21        Q.    You knew you filed the complaint --

22        A.    Yes.

23        Q.    -- before you filed this bankruptcy

24   petition?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        A.      True.

2        Q.      I'm sorry.  I just want to clarify to

3  make sure I understand.

4                You knew that a complaint had been filed

5  before you got this bankruptcy petition on file?

6        A.      I knew I called Legal Helpers and I told

7  them that I was harassed.  And that's the last I

8  heard of it.

9        Q.      But you just said that you knew that a

10 complaint had been filed?

11       A.      Maybe not so much a complaint.  I knew I

12 called Legal Helpers and told them.

13       Q.      When did you call Legal Helpers and tell

14 them that you had been harassed?

15       A.      Last year.

16       Q.      When last year?

17       A.      In August of last year I called them.

18       Q.      So in August of 2007, you called Legal

19 Helpers and told them that you had been harassed?

20       A.      Correct.  That is correct.

21       Q.      And what did Legal Helpers do when you

22 told them that?

23       A.      They took a statement that I filled out

24 on-line, and that was the last I heard.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        Q.     They never told you anything about filing
2    a lawsuit --
3        A.     No.
4        Q.     -- in 2007?
5        A.     No.
6        Q.     They didn't tell you that they were
7    filing a complaint?
8        A.     No.
9        Q.     When did they first tell you about the
10   fact that they had filed a complaint in this lawsuit?
11       A.     I just found out about it.
12       Q.     When?
13       A.     This year.
14       Q.     So January of 2008, like you said before,
15   is when you first found out about this lawsuit?
16       A.     It had to have been the end of January
17   that I found out about it, yes.
18       Q.     When you first found out about this
19   lawsuit in January of 2008, who told you about it?
20       A.     I received an e-mail.
21       Q.     From who?
22       A.     Legal Helpers.
23       Q.     Who at Legal Helpers?
24       A.     I don't recall the name of who was on the

1  e-mail.

2        Q.    Was it an attorney?

3        A.    Yes.

4        Q.    Was it the attorney who's here today?

5        A.    I don't think Richard's name was on

6  there.

7        MR. MEIER:  I think I was.  I think I --

8  BY THE WITNESS:

9        A.    I'm not exactly sure.  I don't think it

10 was --

11 BY MS. JONKER:

12       Q.    So it may have been Richard or it may

13 have been another attorney from Legal Helpers?

14       A.    His partner, maybe.

15       Q.    Who told you about this lawsuit?

16       A.    Yes.

17       Q.    And what did they tell you about it?

18       A.    I just received an e-mail.  I'm trying to

19 think what it said.  I don't really recall.  Saying

20 that "We're pursuing your case.  Get in contact with

21 us immediately."  That's when I got in contact with

22 them.

23       Q.    I'm going to show you what I'm marking as

24 exhibit -- Group Exhibit B.

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1                         (WHEREUPON, a certain document

 2                         was marked Deposition Exhibit No.

 3                         B, for identification, as of

 4                         2-28-08.)

 5                         (WHEREUPON, the document was

 6                         tendered to the witness.)

 7   BY MS. JONKER:

 8        Q.    Do you recognize these documents?

 9        A.    Yes.

10        Q.    What are they?

11        A.    They are checks made payable to Majestic

12   Star.

13        Q.    Did you write these checks?

14        A.    Yes.

15        Q.    And these checks were written on your

16   account?

17        A.    Yes.

18        Q.    At National City Bank?

19        A.    Yes.

20        Q.    You recognize the signature on these

21   checks?

22        A.    Yes.

23        Q.    Is it yours?

24        A.    Yes.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    Q.    When did you write these checks?

2    A.    May 6 of '07.

3    Q.    Both of them?

4    A.    Yes.

5    Q.    And they're both for $200, correct?

6    A.    Correct.

7    Q.    And they're made out to the Majestic Star

8 Casino?

9    A.    Yes.

10    Q.    How often do you go to the Majestic Star

11 Casino?

12    A.    Weekly.

13    Q.    When was the last time you were there?

14    A.    Just last week.

15    Q.    How much money would you say you've spent

16 there in the last 12 months?

17    A.    For the whole year how much I lost or how

18 much I --

19    Q.    How much money did you go in with?

20    A.    How much I took with me?

21    Q.    Uh-huh.  Over the last year.

22    A.    Over the last year.

23    Q.    Just an estimate.

24    A.    That I took with me?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1       Q.    Yeah.   When you go in and you buy chips.

2       A.    Right.

3       Q.    I don't want to know how much you've won

4  or lost.   I just want to know --

5       A.    Just how much I took with me?

6       Q.    Yeah.   How much did you spend?

7       A.    Over the last year.

8       MR. MEIER:   Could I ask you to clarify the

9  question?   "How much did you spend?"   Is that what

10 you're asking?

11      MS. JONKER:   Sure.   How much money --

12 BY THE WITNESS:

13      A.    How much did I took of my money -- when I

14 go to the casino, how much I took over the last year.

15 BY MS. JONKER:

16      Q.    Correct.

17      A.    Maybe about 4,000.

18      Q.    Over what time period?   Are you talking

19 about 2007?

20      A.    You said in 12 months.

21      Q.    Yeah.   In the past 12 months.   4,000?

22            Do you go to any other casino's besides

23 Majestic Star?

24      A.    Yes.

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        Q.     Which ones?

 2        A.     Horseshoe.

 3        Q.     Any others?

 4        A.     I've been to Resort.

 5        Q.     What's the name of it?

 6        A.     Resort.  That's it.  R-e-s-o-r-t.

 7        Q.     Any others?

 8        A.     I went to Harrah's.

 9        Q.     Any others?

10        A.     That's it.

11        Q.     How much money have you spent at Harrah's

12 in the past 12 months?

13        A.     Harrah's, maybe about a -- maybe about

14 900.

15        Q.     How much at Horseshoe?

16        A.     Maybe about 500.

17        Q.     And how much at Resort?

18        A.     I don't go there very often.  Maybe 300.

19        Q.     You're sure it's not more?

20        A.     At Resort?

21        Q.     At any of them.

22        MR. MEIER:  You asked for approximations.

23        MS. JONKER:  I did.

24 BY THE WITNESS:
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      A.      And you said at that particular casino,

2   Resort.

3   BY MS. JONKER:

4      Q.      At any of those.  At Harrah's, Horseshoe,

5   Resort.  I'm just asking are you sure that those are

6   accurate approximations or estimates?

7      A.      For each one?

8      Q.      Yes.

9      A.      For those that I mentioned, yes.

10     Q.      Okay.  Looking at these checks, are you

11  the only person on this account, this checking

12  account?

13     A.      Yes.

14     Q.      That's not a joint account?

15     A.      No.

16     Q.      Is there anyone else who has access to

17  this account for any reason?

18     A.      No.

19     Q.      At the time you wrote these checks, did

20  you know that you had insufficient funds to cover

21  them?

22     A.      No.

23     Q.      You didn't know that you -- excuse me.

24             You didn't know that you didn't have

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    enough money in your account to cover these checks?

2        A.    No.

3        Q.    Do you balance your checkbook?

4        A.    No.

5        Q.    Do you keep track of how much you have in

6    your checking account at all?

7        A.    No.

8        Q.    Don't you think it's important to know

9    when you write a check whether or not there's

10   sufficient funds in your account to cover it?

11       A.    Yes.

12       Q.    But you don't do anything to make sure

13   that you have sufficient funds?

14       A.    No.

15       Q.    How did you find out that these checks

16   bounced?

17       A.    Got something in the mail.

18       Q.    What did you get?

19       A.    A statement from the bank, one of those

20   little slips that said not paid, NSF.

21       Q.    What did you do about it?

22       A.    What did I do about it?

23       Q.    Yeah.  When you got the statements from

24   the bank saying that your checks bounced, what did

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   you do about that?
 2         A.     Tried to cover them.
 3         Q.     How did you do that?
 4         A.     Tried to borrow money.
 5         Q.     Who did you try to borrow the money from?
 6         A.     My sister.
 7         Q.     What's her name?
 8         A.     Carol Taylor.
 9         Q.     Carol Taylor?
10         A.     Yes.
11         Q.     How much did you ask her for?
12         A.     $400 to cover the checks.
13         Q.     Did she give it to you?
14         A.     No.
15         Q.     Why not?
16         A.     She didn't have it.
17         Q.     Did you ask anyone else?
18         A.     No.
19         Q.     Why not?
20         A.     Just didn't ask somebody else.
21         Q.     Did you get anything else besides the
22   bank statements telling you that these checks had
23   bounced?
24         A.     I got something else from the collection
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   agency.

 2        Q.    Which collection agency is that?

 3        A.    I think it's Synergy.

 4        Q.    "Certegy"?

 5        A.    Certegy.

 6        Q.    The one who's the Defendant in this

 7   lawsuit?

 8        A.    Yes.

 9        Q.    What did you get from them?

10        A.    A statement saying you owe Majestic Star

11   Casino.

12        Q.    How many statements like that did you

13   get?

14        A.    I don't recall.  Maybe two or three.

15        Q.    What did you do when you received those

16   statements?

17        A.    What did I do?

18        Q.    Yeah.  What did you do in response to

19   receiving them?

20        A.    There was nothing I could do.

21        Q.    What do you mean?

22        A.    There was nothing I could do.  I didn't

23   have the money at the time.

24        Q.    Did you try to borrow the money from
```

1  anyone?

2        A.    Only person I can try to borrow money

3  from is my sister.

4        Q.    There's no one else that you could ask

5  for a loan or for money or anything?

6        A.    No.

7        Q.    And you didn't have any money yourself to

8  pay these debts?

9        A.    No.

10        Q.    Did you get any phone calls about these

11  bounced checks?

12        A.    No, not these two, that I recall.

13        Q.    Do you have an answering machine?

14        A.    I have voicemail.

15        Q.    What's your phone number for the

16  voicemail?

17        A.    (708) 596-4689.

18        Q.    Do you have any other phone numbers

19  besides that one?

20        A.    I have a cell phone.

21        Q.    What number is that?

22        A.    (708) 359-5190.

23        Q.    Besides this debt, meaning these two

24  bounced checks here, do you have any other debts?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1       A.    Yes.

2       Q.    Any debt collectors or creditors trying

3  to collect those debts from you?

4       A.    Credit card debts?

5       Q.    Any kind of debts.

6             Do you have any debt collectors or

7  creditors calling you to try to collect any kind of

8  debts besides the one for these checks?

9       A.    Yes.

10      Q.    Who's been calling you?

11      A.    Visa.

12      Q.    How much do you owe Visa?

13      A.    I owe one about 1300, I do believe.

14      Q.    Any others?

15      A.    One other one, MasterCard.

16      Q.    And how much do you owe MasterCard?

17      A.    I could have them twisted.   700.

18      Q.    And you get phone calls or letters from

19  Visa or MasterCard?

20      A.    Yes.

21      Q.    Regarding these debts?

22      A.    Yes.

23      Q.    Do you ever speak to anyone in person

24  regarding these debts on the phone?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.    Yes.

 2        Q.    How many times?

 3        MR. WEINMAN:  Sorry to interrupt.  Is there any

 4 way the --

 5        THE COURT REPORTER:  I can't hear him.

 6        MS. JONKER:  Let's just go off the record for a

 7 moment.

 8                         (WHEREUPON, there was a short

 9                          interruption.)

10        MS. JONKER:  We'll go back.  What was our

11 pending question?

12                         (WHEREUPON, the record was read

13                          by the reporter as requested.)

14 BY MS. JONKER:

15        Q.    How many times have you received phone

16 calls from Visa or MasterCard regarding these debts?

17        A.    On my voicemail, I'll say -- within a

18 month?

19        Q.    Within the last 12 months.

20        A.    Oh, within the last 12 months.  I'm going

21 to say over the last 12 months, messages on my

22 answering machine, maybe 30.

23        Q.    Just from these two creditors?

24        A.    Yes.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      What about speaking to someone on the
2   phone in person from these two creditors?   How many
3   times have you spoken to someone live on the phone
4   from these two creditors?

5      A.      Maybe five times.

6      Q.      In the last 12 months?

7      A.      Maybe.

8      Q.      What other debt collectors or creditors
9   have been calling you to --

10     A.      Beneficial.

11     Q.      How many times has Beneficial called you
12  in the last 12 months?

13     A.      I'm going to say maybe about 30 times.

14     Q.      And how many times did you actually speak
15  to a live person from Beneficial?

16     A.      Maybe about ten times.

17     Q.      And who else besides Beneficial?

18     A.      Great American Finance.

19     Q.      And how many times has anyone from Great
20  American Finance called you?

21     A.      About five times.

22     Q.      And how many times did you speak to a
23  person from Great American Finance?

24             This is the last 12 months still that

KATRINA DOUGLAS, FEBRUARY 28, 2008

1   we're talking about.

2        A.    About two times.

3        Q.    Who else besides Great American Finance

4   has called you about debts in the last 12 months?

5        MR. MEIER:  Besides the Defendant, Certegy,

6   right?  Or are you including Certegy?

7        MS. JONKER:  I'm not talking about the debt

8   that's at issue in this case.  I'm talking about

9   other creditors and debt collectors.

10       MR. MEIER:  Okay.

11  BY THE WITNESS:

12       A.    That's all that I can recall.

13  BY MS. JONKER:

14       Q.    Have you received any calls from

15  Barclay's Bank?

16       A.    That's one of the MasterCard, Visa.

17       Q.    What about Capital One?

18       A.    That's one of them.  It's only two.

19       Q.    That's also a MasterCard or Visa?

20       A.    Right.  It's only those two.

21       Q.    What about Cashcall, Inc.?  It looks like

22  you owe them over $2500.  Have they called you about

23  that debt?

24       A.    No, because I was paying them.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.    Have you paid that debt off?

2      A.    No.

3      Q.    Are you still making payments to

4   Cashcall?

5      A.    No.

6      Q.    When did you stop making payments?

7      A.    I do believe January.  I think I paid

8   them December.

9      Q.    January of 2008?

10     A.    Yes.

11     Q.    What about Ingalls Hospital?

12     A.    I haven't had a call from Ingalls.

13     Q.    You listed CBCS as a collection agency

14  that's trying to collect a debt to Ingalls Hospital

15  on your bankruptcy petition.

16     A.    Yes.

17     Q.    Did you receive calls from CBCS?

18     A.    No, not that I recall.

19     Q.    Did you get letters from them?

20     A.    Maybe two or three.

21     Q.    Did you have any other communication with

22  this collection agency?

23     A.    No.

24     Q.    What about Harrah's; have you heard from

1  anyone trying to collect on your debt to Harrah's?

2      A.    Yes.

3      Q.    Who?  Who called you?

4      A.    Will County Bad Check.

5      Q.    Bad Check what?

6      A.    Department.

7      Q.    How many times did they call you?

8      A.    I do believe I spoke to them about three

9  times.

10     Q.    And how many times did they leave

11 messages on your answering machine?

12     A.    I don't think they left a message on my

13 answering machine.  I got correspondence from them,

14 and I called them.

15     Q.    How many letters did you get from them?

16     A.    I recall two.

17     Q.    And you spoke to them three times?

18     A.    For arrangements to make payment.

19     Q.    And did you make any payments?

20     A.    Yes.

21     Q.    When did you make those payments?

22     A.    When?

23     Q.    Uh-huh.

24     A.    Last year.

1      Q.    When last year?

2      A.    I'm going to say maybe the latter part of

3 last year.  September, I want to say.

4      Q.    How much did -- I'm sorry.  Go ahead.

5      A.    September, I want to say.

6      Q.    How much did you pay?

7      A.    A hundred dollars.

8      Q.    That's it?  That was the total amount you

9 paid?

10     A.    Two.

11     Q.    $200?

12     A.    Yes.

13     Q.    And you still owe them $275?

14     A.    No, I owe them $560, because they tacked

15 on attorney -- a class you had to take which was

16 $160.

17     Q.    So you still owe $560 to Harrah's?

18     A.    Yes.

19     Q.    When did you get phone calls from

20 Harrah's?

21     A.    I didn't get a phone call from Harrah's.

22     Q.    I'm sorry.  From the Will County Bad

23 Check Department.  You said you got three phone calls

24 from them.  When did they call you?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.    I spoke to them.  I called them.
 2        Q.    Okay.  And when did you speak to them?
 3        A.    I made arrangements, payment
 4  arrangements, back, I do believe, in September of
 5  last year.
 6        Q.    So all three phone calls were in
 7  September of 2007?
 8        A.    Yes.  Well, not so much September, but
 9  the latter part of last year.  I'm thinking the first
10  conversation started in September.
11        Q.    And you're telling me that all three
12  phone calls were ones that you initiated?
13        A.    Yes.  If not I initiated, maybe one call
14  I got from them.  I'm trying to think.  Maybe one
15  call.  If not, I initiated all three.
16        Q.    Okay.  How about HC Credit?  It looks
17  like, from your bankruptcy petition, you owe them
18  $134.
19              Did they ever contact you to try to
20  collect that?
21        A.    No.  I was paying that.
22        Q.    You were paying them?
23        A.    Yes.
24        Q.    What about Juniper Bank; did you ever
```

1  hear from them?

2      A.    That's one of the MasterCard, Visa.    They

3  changed their name to Barclay, I believe.

4      Q.    Well, you've got Juniper Bank listed

5  separately here on your bankruptcy petition.   You're

6  telling me that the debt you owe to Juniper Bank is

7  the same as the debt you owe to Barclay's?

8      A.    How much is Juniper Bank?

9      Q.    $460.   You can look at it on the

10 petition, if you want.

11     A.    Oh.   I do believe they changed their name

12 to Barclay.   I'm not quite sure.

13     Q.    It's at the orange tab.

14     A.    Thank you.   Juniper Bank.   Where's

15 Barclay?

16     MR. MEIER:   Barclay is in front.

17 BY THE WITNESS:

18     A.    I'm not exactly sure, but I think they're

19 one and the same.

20 BY MS. JONKER:

21     Q.    How many credit cards do you have,

22 Ms. Douglas?

23     A.    I had two.

24     Q.    Only two?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1          A.     Correct, yes.

2          Q.     What is American General Finance?  What

3    is your account with them?  Is that a credit card?

4          A.     No.  That's a loan company.

5          Q.     And how much was your loan from American

6    General Finance?

7          MR. MEIER:  Where do you see that?

8          MS. JONKER:  That's the very first one.

9    BY THE WITNESS:

10         A.     That's not -- I don't have an account

11   with them.

12   BY MS. JONKER:

13         Q.     You don't have an account with American

14   General Finance?

15         A.     No.

16         Q.     Why are they on your bankruptcy petition?

17         A.     It's possible they got it off the credit

18   report.

19         Q.     Who got it off the credit report?

20         A.     The attorney, Ernesto, because I don't

21   have an account with American General.  I had an

22   account with them years ago, but I no longer have an

23   account with them now.

24         Q.     Did you close the account?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      A.    I do believe it was closed.

2      Q.    Did you pay it off before you closed it?

3      A.    I'm trying to think if it was paid off or

4 if it was part of a bankruptcy eight years ago.

5      Q.    So you declared bankruptcy also eight

6 years ago?

7      A.    Yes.

8      Q.    Was that a Chapter 13 or a Chapter 7?

9      A.    That was a Chapter 7 with my husband.

10     Q.    What about Beneficial Household Finance;

11 is that a credit card?

12     A.    No.

13     Q.    What is that?

14     A.    Unsecured loan.

15     Q.    And how much was your loan for?

16     A.    It was -- the credit limit was 10,000.

17     Q.    And you said that you probably received

18 about 30 phone calls from Beneficial on that debt,

19 right?

20     A.    Yes.

21     Q.    Over the last 12 months?

22     A.    Yes.

23     Q.    And Capital One was either a Visa or a

24 MasterCard?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.     Correct.

 2        Q.     And Barclay's Bank was a Visa or a

 3   MasterCard?

 4        A.     Correct.

 5        Q.     And Cashcall was a loan?

 6        A.     Yes.

 7        Q.     For how much?

 8        A.     It was 2100.

 9        Q.     And it looks like you have another loan

10   from Great American Finance?

11        MR. MEIER:  This one?

12        MS. JONKER:  Yeah.

13   BY MS. JONKER:

14        Q.     So you have more than one loan from Great

15   American Finance?

16        A.     No.  The first one is American General.

17   This is Great American Finance.  Only one with Great

18   American Finance.

19        Q.     Okay.  And with Harrah's, you had two

20   bounced checks?

21        A.     Correct.

22        Q.     They're listed on here as lines of

23   credit?

24        A.     No, I don't have a line of credit with
```

1    Harrah's.   They were checks.

2         Q.    They were checks?

3         A.    Yes.

4         Q.    And now here's HC Credit.   That's listed

5    as a credit card.   So you have a credit card with

6    HC Credit?

7              It's right under Harrah's.

8         A.    No, that's not a credit card.   It was --

9    I don't know what you want to call that.   It was -- I

10   guess you can call it a credit card, but I don't have

11   a credit card.   It was --

12        Q.    A line of credit?

13        A.    Yes.   No.   It wasn't even a line of

14   credit.   It was a purchase I made.

15        Q.    What did you buy?

16        A.    A treadmill.

17        MR. MEIER:   You purchased it on credit,

18   correct?

19        THE WITNESS:   Yes.

20   BY MS. JONKER:

21        Q.    So it's a credit card but you didn't have

22   a physical plastic card?

23        A.    Correct.

24        Q.    And Juniper Bank was a credit card as

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1  well?

 2       A.    Yes.

 3       Q.    And then going down the bankruptcy

 4  petition, the two bounced checks to Majestic Star?

 5       A.    Yes.

 6       Q.    And then the next one is a $13,874 debt

 7  to Majestic Star.  What is that?

 8       A.    Why they have that for a line of credit

 9  is beyond me because I did not have a line of credit

10  with Majestic Star.

11       Q.    What about the debt, $13,874; how did you

12  get to owe them that much money?

13       A.    My understanding, that's part of Certegy.

14       Q.    What's part of Certegy?

15       A.    This 13,000.  Why it's listed as a line

16  of credit, I don't know.

17       Q.    When you say it's "part of Certegy," what

18  do you mean?

19       A.    Certegy.

20       MR. MEIER:  The debt that they're trying to

21  collect?

22       THE WITNESS:  Yes.

23  BY MS. JONKER:

24       Q.    So the $13,874 is a debt that Certegy is
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1    trying to collect from you?

 2         A.    Correct.

 3         Q.    And how did you incur that debt?  Did you

 4    spend this money at Majestic Star?

 5         A.    Yes.

 6         Q.    So you spent $13,874 at Majestic Star

 7    Casino?

 8         A.    Yes.

 9         Q.    Did you spend more than that and this is

10    just what you owe?

11         A.    No, I did not spend more that.

12         Q.    Other than the two checks for $225, this

13    $13,874 is the total amount that you lost at Majestic

14    Star other than those two checks?

15         A.    Correct.

16         Q.    And how did you get to spend that much

17    money at Majestic Star?  Did you write a check for

18    that?

19         A.    No.

20         Q.    What did you do?

21         A.    I got that from the ATM machine on

22    Majestic Star.

23         Q.    You took out over $13,000 from an ATM

24    machine?
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      A.     Over a weekend, yes.

2      Q.     From your account?

3      A.     No, not from my account.

4      Q.     Where did it come from?

5      A.     From Majestic Star ATM machine.

6      Q.     Whose money was it?

7      A.     My understanding is the ATM machine is

8 rented out of Majestic Star.

9      Q.     You're talking about a cash machine,

10 right?

11     A.     Yes, ATM machine.

12     Q.     Was it affiliated with a bank?

13     A.     Was it affiliated with the bank?

14     Q.     Right.

15     A.     I don't know.

16     Q.     How did you take money out of the ATM

17 machine?

18     A.     Purchase order.  You know how you do

19 purchase order on the ATM machine?

20     Q.     No, I don't.  Tell me about it.

21     A.     Well, you go to the ATM machine and you

22 press "Other," and "Other" asks you, "How much would

23 you like to withdraw?"

24     Q.     And how much did you withdraw?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1          A.     500, 1,000, over a four-week -- four-day

2    period.   Several amounts.   And I'm not sure that it

3    amounted to this amount here.

4          MR. MEIER:   Did the machine give you the money?

5          THE WITNESS:   It gave me a slip to take up to

6    Majestic Star window, and then they give you cash.

7    BY MS. JONKER:

8          Q.     So you didn't draw money, this money, out

9    of your personal bank account?

10         A.     No, I did not.

11         Q.     You were basically getting a loan from

12   Majestic Star?

13         A.     I wouldn't say I was getting a loan from

14   Majestic Star.

15         Q.     Then what would you call it?

16         A.     I'm not exactly sure.

17         Q.     It wasn't your money, though, right?

18         A.     No.

19         Q.     It didn't come from your bank account?

20         A.     No.

21         Q.     It came from Majestic Star?

22         A.     Yes.

23         Q.     And you owe that to them?  You owe them

24   this amount, $13,874, correct?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    A.    Yes.

2    Q.    I'm sorry.  I didn't hear you.

3    A.    Yes.

4    MR. MEIER:  I'm sorry if I keep coughing.  I'm

5    getting over a cold.

6    MS. JONKER:  That's okay.

7    BY MS. JONKER:

8    Q.    Looking at your bankruptcy petition at

9    the very last entry, there's something called The

10    Money Market and it says "payday loan"?

11    A.    Yes.

12    Q.    How much was the total loan for?

13    A.    $400.

14    Q.    And did you get any phone calls or

15    letters, any kind of communication from The Money

16    Market or any collection agency on their behalf?

17    A.    No.

18    Q.    Did you make payments on your own?

19    A.    Yes.

20    Q.    Going back to the Majestic Star debt, the

21    $13,000 one, did you get any phone calls or letters

22    regarding that debt?

23    A.    From Synergy?

24    Q.    From Certegy.

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
1        A.      Certegy.

2        Q.      The Defendant in this lawsuit.

3        A.      Yes.

4        Q.      How many phone calls did you get?

5        A.      About three.

6        Q.      Were they to your answering machine or

7   did you talk to someone live?

8        A.      I spoke to someone live.

9        Q.      When were those calls?

10       A.      The last call I remember is August 6.

11       Q.      When were the other two calls?

12       A.      Prior to.

13       Q.      How much prior to?

14       A.      Maybe two weeks back.

15       Q.      Two weeks prior to August 6?

16       A.      Yes.

17       Q.      These checks, the ones that are in

18  Exhibit B, those were also made out to Majestic Star,

19  correct?

20       A.      Correct.

21       Q.      Did you receive any phone calls about

22  those?

23       A.      Not that I recall.

24       Q.      The phone call at issue in this lawsuit
```

1  was in relation to what debt?

2        A.    This Majestic Star debt (indicating).

3        Q.    For how much?  Which debt are you

4  referring to?

5        A.    The 13,000.

6        Q.    $13,000 debt, that's the one that you

7  allegedly got this phone call from Certegy?

8        A.    Yes.

9        Q.    How do you know you got a phone call on

10 August 6th?

11       A.    I remember it.

12       Q.    Did you take notes?

13       A.    No.

14       Q.    Who did you talk to?

15       A.    A lady named Jennifer.

16       Q.    Prior to that date, had you ever received

17 any phone calls from Certegy?

18       A.    From Jennifer, yes.

19       Q.    How many calls?

20       A.    Three.

21       Q.    Were all three --

22       A.    From Jennifer.

23       Q.    What did this person say to you?

24       A.    Each time?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        Q.      Yeah.

2        A.      The first time that I recall was in

3    regards to the debt.

4        Q.      And what was said?

5        A.      If I recall right, it was making

6    arrangements to pay the debt.

7        Q.      Did you make some arrangements to pay it?

8        A.      I told her I was going to try to make

9    arrangements to pay the debt.

10       Q.      How much were you going to pay?

11       A.      I was going to try to send her $500 by

12   the end of the month.

13       Q.      Anything else?  Just a one-month payment

14   or was there going to be other payments, too?

15       A.      There were going to be other payments.

16       Q.      Tell me about those.  What was your plan?

17       A.      The plan was to make arrangements to pay

18   the debt on a monthly basis.

19       Q.      And how much were you going to pay each

20   month?

21       A.      We didn't get that far to discuss that.

22       Q.      So you were going to pay $500 by the end

23   of August against your $13,874 debt?

24       A.      Correct.

1      Q.     And then you were going to try to make
2   additional payments after that?
3      A.     Yes.
4      Q.     And that was your first phone call?
5      A.     Yes.
6      Q.     What else did you discuss during that
7   first phone call?
8      A.     That's all that I recall.
9      Q.     Okay.  What about the second phone call?
10     A.     The second phone call, to my knowledge,
11  she said correspondence was sent out in regards to
12  the debt from the Accounting Department of Majestic,
13  and I told her I didn't receive that correspondence.
14         And it was supposed to be re-sent to me.
15  I never received it.
16     Q.     Okay.  What else did you discuss during
17  that phone call?
18     A.     That's all that I can recall.
19     Q.     And what about the third phone call?
20     A.     The third phone call is when she told me
21  that I needed to contact the Indiana Gaming
22  Commissioner, and it was more like if I didn't come
23  up with the money soon, that it's possible I could be
24  going to jail.

1    Q.    That's what she said?

2    A.    She said that I need to contact the

3    Indiana Gaming Commissioner.

4    Q.    What else did she say?  Anything else

5    besides that?

6    A.    That they, meaning the collection agency,

7    and the Gaming Commissioner, I'm assuming.

8    Q.    What?  Go ahead.  I'm listening.  What

9    did she say?

10    A.    That's what she said.

11    Q.    "That they" what?

12    MR. MEIER:  Were they going to do anything?

13    BY MS. JONKER:

14    Q.    Do you understand the question?

15    A.    Yes.

16    Q.    I'm waiting for your answer.  You said so

17    far that during this conversation, which I believe

18    was you said August 6th of 2007?

19    A.    Right.

20    Q.    You spoke to Jennifer and Jennifer told

21    you to contact the Indiana Gaming Commission.  Did

22    she say anything else besides that?

23    A.    I do believe that they were going to

24    proceed legal actions against me.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      You believed that?

2      A.      If I recall the conversation, yes.

3      Q.      Tell me exactly what she said.

4      A.      I can't give you word for word exactly

5  what she said.  The best of my knowledge is what she

6  said that I recall.

7      Q.      Could you repeat it for me because I'm a

8  little confused.  She said that you should contact

9  the Indiana Gaming Commissioner --

10     A.      That they were going to be in contact

11  with me.  I should contact the Indiana Gaming

12  Commissioner --

13     Q.      Wait a second.  That you should contact

14  them or they were going to contact you?

15     A.      That I should contact them.

16     Q.      And what else did she say?

17     A.      Or they're going to proceed with legal

18  actions against me.

19     Q.      Who would?

20     A.      "They" meaning the collection agency.

21     Q.      What legal action?

22     A.      I don't know.

23     Q.      What else did she say?

24     A.      That's all that I can recall.

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        Q.    Did she describe the legal action?

 2        A.    No.

 3        Q.    Did she say anything else at all?

 4        A.    Not that I can recall.

 5        Q.    I want to go back and talk about a couple

 6  other phone calls that you had mentioned.

 7              You said that Beneficial had called you

 8  probably about 30 times?

 9        A.    Yes.

10        Q.    And left messages on your answering

11  machine?

12        A.    They left messages, about 30 messages.

13        Q.    And that you also talked to them probably

14  about ten times?

15        A.    Correct.

16        Q.    When did you talk to them?  What dates?

17        A.    I don't have those dates.

18        Q.    Was it during 2007?

19        A.    Yes.

20        Q.    What part of 2007?  Winter?  Summer?

21  Spring?  Fall?

22        A.    I'm going to say fall and winter.

23        Q.    And what did you talk to them about?

24        A.    I had got behind in payments.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.    What kind of payments were you making?

2      A.    $300 a month.

3      Q.    When did you make those payments?

4      A.    I was making them on a regular throughout

5    the summer.  Then I got behind in the fall.

6      Q.    This was 2007?

7      A.    Yes.

8      Q.    What happened when you got behind?

9      A.    What do you mean "what happened when I

10   got behind?"

11     Q.    Did they start calling you more?

12     A.    Yes.

13     Q.    How many times a day did they call you?

14     A.    Maybe twice a day.

15     Q.    For how long?  How many months?

16     A.    I'm going to say about two months.

17     Q.    Did they send you any letters?

18     A.    Yes.

19     Q.    How many?

20     A.    I can't recall how many.

21     Q.    More than ten?

22     A.    No.

23     Q.    More than five?

24     A.    Five letters?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        Q.      Yeah.
 2        A.      Maybe about five.
 3        Q.      What did they say during your
 4   conversations with them?
 5        A.      When will I be able to pay.
 6        Q.      And what did you tell them?
 7        A.      I'm doing my best to pay them.
 8        Q.      Did you ever resume your payments?
 9        A.      Yes.
10        Q.      When?
11        A.      I'm trying to think the last payment I
12   made to them.  I think my last payment I sent them
13   was maybe in October.
14        Q.      Did they ever say that they were going to
15   file a lawsuit against you?
16        A.      No.
17        Q.      Did they ever say that they were going to
18   have a collection agency contact you?
19        A.      That my file will be transferred to
20   collections.
21        Q.      Was it transferred to collections?
22        A.      Yes, I do believe --
23        Q.      Which collection agency?
24        A.      I think they have their own internal
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1  collections.

2      Q.    And how many calls did you get from that

3  collection agency?

4      A.    Maybe three.

5      Q.    When did you get those calls?

6      A.    In the fall of last year.

7      Q.    August?  September?  October?

8      A.    October, November.  September, October,

9  November.

10      Q.    And what did you discuss with that

11  collection agency?

12      A.    That I was doing my best to pay them.

13      Q.    Did they say they were going to sue you

14  ever?

15      A.    No.

16      Q.    Did they send you any collection letters?

17      A.    No.

18      Q.    When they contacted you, what did you

19  talk about?

20      A.    Making payment arrangements.

21      Q.    And what arrangements did you make?

22      A.    I told them that I was going to pay them

23  as best as I could.

24      Q.    And what did they say?

1       A.      "Okay."

2       Q.      That was it?

3       A.      That was it.

4       Q.      They didn't say anything else?

5       A.      No.

6       Q.      You said that on your Visa and your

7  MasterCard, you had about 30 to 35 phone calls for

8  collection of the amounts you owed?

9       A.      On the answering machine.

10      Q.      Did you talk to anyone live?

11      A.      Not much.

12      Q.      "Not much"?

13      A.      No.

14      Q.      Ever?

15      A.      No.

16      Q.      So you never spoke to anyone live about

17  your --

18      A.      No, I'm not saying I never spoke to

19  anyone.  "Not much."  Maybe two or three times.

20      Q.      When?

21      A.      Last year, fall.

22      Q.      What dates?

23      A.      I don't have exact dates.

24      Q.      Well, you remembered August 6th.  Why

1    can't you remember any other dates?

2          A.    It wasn't no threatening phone call.

3          Q.    So no one during these phone calls ever

4    said that they might file a lawsuit?

5          A.    No.

6          Q.    No one ever told you that you needed to

7    pay these debts?

8          A.    Oh, they told me I need to pay the debts.

9          Q.    And if you didn't pay them, then what?

10   What would happen?

11         A.    They didn't say what would happen.

12         Q.    What about Great American Finance; you

13   got several calls from them.  What did you discuss

14   with them?

15         A.    Payment arrangements.

16         Q.    What arrangements did you make with them?

17         A.    I told them I was going to pay them as

18   best I could.

19         Q.    So nothing specific?

20         A.    Nothing specific.

21         Q.    Did you make any payments?

22         A.    My last payment with Great American

23   Finance was, I do believe, November.

24         Q.    November of what?

1      A.      '07.

2      Q.      How much did you pay?

3      A.      $119.

4      Q.      How have you been damaged, Ms. Douglas?

5      A.      Pertaining to -- can you be more

6  specific?

7      Q.      This lawsuit.  You're claiming damages.

8  How have you been damaged?

9      A.      At the time of the call, I was scared.  I

10  didn't know what's going to happen to me.

11      MR. MEIER:  To clarify, what call are you

12  referring to?

13      THE WITNESS:  From Synergy.

14  BY MS. JONKER:

15      Q.      Certegy?

16      A.      Certegy.

17      Q.      When you got a call from Certegy, you

18  were scared?

19      A.      Yes.

20      Q.      Of what?

21      A.      Of the nature of the debt.  What they

22  were going to do.  Her telling me to go to the

23  Indiana Gaming Commissioner.

24      Q.      Well, previously, you had received calls

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1  from the Will County Bad Check Department, hadn't
 2  you?
 3        A.     I called them to make arrangements to pay
 4  the debt.
 5        Q.     And you were told to call them, correct?
 6        A.     Yes.
 7        Q.     By whom?
 8        A.     The letter I received.
 9        Q.     Were you scared then?
10        A.     Yes.
11        Q.     And you got phone calls from Barclay's
12  Bank and Capital One Bank and Juniper Bank about the
13  debts you owed them, right?
14        A.     Yes.
15        Q.     Were you scared about those phone calls?
16        A.     They didn't threaten me, no.
17        Q.     But they called you over 30 times in a
18  period of a couple months.  Weren't you getting a
19  little scared then?
20        A.     No.
21        Q.     What about Beneficial Bank; they called
22  you over 40 times in a period of a couple of months?
23        A.     They were working with me.
24        Q.     Because you were paying them, right?
```

```
 1         A.     Correct.
 2         Q.     What other damages do you have besides
 3   being scared?
 4         A.     What other damages I have besides being
 5   scared?
 6         Q.     Yeah.  You said you were scared because
 7   you owed over $13,000 to Majestic Star Casino.
 8                How else were you damaged?
 9         A.     I wasn't able to sleep.
10         Q.     Oh.  For how long?
11         A.     For about a month.
12         Q.     When?
13         A.     When I got the call.
14         Q.     A month after you got the call, you
15   weren't able to sleep?
16         A.     I was afraid.
17         Q.     What did you do about that?
18         A.     Of not sleeping?
19         Q.     Yeah.
20         A.     There's nothing I could do.
21         Q.     Did you go see a doctor?
22         A.     No.
23         Q.     Did you take anything?
24         A.     No.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      You didn't take anything to help you

2  sleep?

3      A.      No.

4      Q.      Did you see a psychiatrist?

5      A.      No.

6      Q.      A psychologist?

7      A.      No.

8      Q.      A counselor of any kind?

9      A.      No.

10      Q.      So you were scared and you lost sleep,

11  but you didn't contact anyone about this at all?

12      A.      Nobody.  No.

13      Q.      Did you call the Indiana Gaming

14  Commission?

15      A.      No.

16      Q.      Why not?

17      A.      That's when I called the attorney, Legal

18  Helpers.

19      Q.      So you never bothered to call the Indiana

20  Gaming Commission?

21      A.      No.

22      Q.      Any other damages?

23      A.      No.

24      Q.      That's it?  You're sure?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        A.     I think I'm sure.

2        Q.     Did you have any out-of-pocket costs?

3        MR. MEIER:   What are you referring to?

4   BY MS. JONKER:

5        Q.     Did you have to pay anything for this

6   lawsuit?

7        A.     No, I haven't had no out-of-pocket costs.

8        Q.     But Certegy is stuck with a $13,874 debt

9   that you owe, right?

10       A.     Right.

11       Q.     But you're the one who lost sleep, is

12   that what you're telling me?

13       A.     Yes.

14       Q.     And you didn't have any medical treatment

15   at all?

16       A.     No.

17       Q.     And you didn't have any psychologic or

18   counseling treatment at all?

19       A.     No.

20       Q.     Did you talk to anyone about this?

21       A.     A friend.

22       Q.     Who?

23       A.     My best friend.

24       Q.     What's her name?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.    Sheila.

 2        Q.    Sheila what?

 3        A.    Jones.

 4        Q.    What's her address?

 5        A.    I don't have her address.  She lives in

 6  Matteson.

 7        Q.    Madison, Wisconsin?

 8        A.    Illinois.

 9        Q.    What's her phone number?

10        A.    I don't have that.  It's in my cell

11  phone.  I remember no numbers.

12        Q.    Can we have it?

13        A.    Yes.  (708) 748-0536.

14        Q.    Did you talk to anyone else besides

15  Sheila?

16        A.    Yes.

17        Q.    Who?

18        A.    Jerome Jones.

19        Q.    Who is Jerome?

20        A.    A friend.

21        Q.    Where does he live?

22        A.    In Indiana.

23        Q.    Where in Indiana?

24        A.    I don't know the city.
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.    Is it nearby Chicago?   Is it northwestern
2  Indiana?
3      A.    Yes.
4      Q.    So maybe Gary or a town around there?
5      A.    Not Gary, but a town around there.
6      Q.    Do you have his phone number?
7      A.    Yes.  (708) 420-0934.
8      Q.    Did you talk to anyone else besides
9  Sheila and Jerome?
10     A.    My sister.
11     Q.    Is that the sister you referred to
12 before, Carol Taylor?
13     A.    No, a different sister.
14     Q.    What's this sister's name?
15     A.    Angela Taylor.
16     Q.    Where does she live?
17     A.    Blue Island.
18     Q.    Do you have a phone number for her?
19     A.    Yes.  (708) 925-9659.
20     Q.    Did you talk to anyone else besides
21 Sheila, Jerome, and Angela?
22     A.    No.
23     Q.    That's it?
24     A.    Yes.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      Q.      Did you ask any of them for any money to
2  pay your debts?
3      A.      Yes.
4      Q.      Which debts did you pay off with the
5  money you got from them?
6      A.      I asked them for money.  I didn't get any
7  from them.  They didn't have any to loan.
8      Q.      So none of them loaned you any money?
9      A.      No.
10      Q.      Where did you get the money to pay off
11  your debts?
12      A.      I work.
13      Q.      So your income from your job is what you
14  used to pay off some of your debts?
15      A.      Correct.
16      Q.      But not your debts to Majestic Star?
17      A.      Pardon me?
18      Q.      You didn't use any of your money to pay
19  off any of your debts to Majestic Star?
20      A.      No.
21      Q.      Do you have any other damages?
22      A.      No.
23      Q.      Are you sure?
24      A.      No.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        Q.     Do you want to take a minute and think
2   about it?
3        A.     Yes.
4               May we take a break?   Can I speak to my
5   counselor?
6        Q.     Anything you say to your attorney right
7   now, you have to repeat to me because we have a
8   pending question.
9        A.     Okay.
10       Q.     Are you ready to answer the question?
11       A.     No.   May I have some water?
12       Q.     Sure.   Go right ahead.
13                    (WHEREUPON, there was a short
14                    interruption.)
15       MS. JONKER:   Could you read us the pending
16   question?
17                    (WHEREUPON, the record was read
18                    by the reporter as requested.)
19   BY MS. JONKER:
20       Q.     Have you thought about whether you have
21   any more damages that you want to tell us about?
22       A.     No others than the ones that I mentioned.
23       Q.     That's it?
24       A.     That I can -- uh-huh.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1     Q.     Are you a named Defendant in a lawsuit by

2 the Indiana Gaming Commission?

3     A.     No, not that I know of.

4     Q.     Are you a named Defendant in any lawsuit?

5     A.     Not that I know of.

6     Q.     Are you currently being prosecuted for

7 taking money from the ATM at the Majestic Star?

8     A.     No.

9     Q.     You're not involved in any lawsuit at all

10 right now besides this one, is that what you're

11 telling me?

12     A.     Not that I know of.

13     Q.     Are you sure?  You're under oath.  Under

14 penalty of perjury.

15     A.     Not that I know besides the one that

16 we're doing now.

17     Q.     The debt on your bankruptcy petition for

18 $13,874 that you said you got that money from an ATM

19 machine through a purchase order, are you involved in

20 any kind of lawsuit or any kind of legal proceeding

21 whatsoever regarding that ATM withdrawal?

22     A.     No.

23     Q.     Are you sure?

24     A.     I haven't received anything that I was

KATRINA DOUGLAS, FEBRUARY 28, 2008

1  under any type of lawsuit.

2      Q.    Did anyone contact you telling you that

3  you might be involved in some type of legal

4  proceeding regarding this?

5      A.    No.

6      Q.    Have you talked to anyone about being

7  involved in any kind of legal proceeding at all

8  regarding this debt, the $13,874 debt, where you took

9  the money out of the ATM at Majestic Star?

10     A.    Okay.

11     Q.    Has anyone communicated with you or have

12  you communicated with anyone else about any kind of

13  legal proceeding whatsoever regarding that

14  transaction?

15     A.    No.

16     MR. MEIER:  Other than this lawsuit right here?

17     MS. JONKER:  Yeah, I'm not talking about this

18  FDCPA lawsuit.

19  BY THE WITNESS:

20     A.    No, I'm not involved in no lawsuit.

21  BY MS. JONKER:

22     Q.    You're not being prosecuted by anyone at

23  all?

24     A.    No.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1          MR. MEIER:  To the best of your knowledge.
2    BY THE WITNESS:
3          A.    To the best of my knowledge, no.
4    BY MS. JONKER:
5          Q.    Are you sure?  Because you're under oath.
6          A.    To the best of my knowledge, no.
7          MR. MEIER:  Counsel, asked and answered.  She
8    answered she doesn't know to the best of her
9    knowledge.
10   BY MS. JONKER:
11         Q.    What did you think you were doing when
12   you took that money out of the ATM machine?
13         A.    What do you mean?  Be specific.  What do
14   I think I was doing.
15         Q.    You said the money wasn't yours.  Who did
16   you think it belonged to?
17         A.    I'm not sure if I understand your
18   question.
19         Q.    The $13,874 that you took out of the
20   Majestic Star ATM over the period of a weekend --
21         A.    Yes.
22         Q.    -- who did you think that money belonged
23   to when you took it out?
24         A.    It belonged to whoever owned the ATM

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1   machine.
 2          Q.     Why would they give that money to you?
 3   It didn't belong to you, did it?
 4          A.     No, it didn't belong to me.
 5          Q.     What made you think that you could take
 6   out over $13,000 of someone else's money?
 7          A.     What makes me think?  What gives me the
 8   right?
 9          Q.     Why did you think that you could take out
10   over $13,000 of someone else's money from an ATM
11   machine?
12          A.     I'm not sure how to answer that.
13          Q.     Well, the money didn't belong to you.
14   Who did it belong to?
15          A.     I can't answer that.
16          Q.     What did you think you were doing when
17   you took that money out?
18          A.     What do I think I was doing?  I was
19   gambling.
20          Q.     You weren't gambling when you took money
21   out of the ATM.  You were taking money that belonged
22   to someone else.
23                 What made you think you could take that
24   money?
```

1    A.    I can't answer that.

2    Q.    Why not?

3    A.    Because I was gambling.

4    MR. MEIER:  Was it a loan?

5 BY MS. JONKER:

6    Q.    The money didn't belong to you, did it?

7    THE WITNESS:  No, it wasn't a loan.

8 BY MS. JONKER:

9    Q.    I'm sorry.  Repeat what you just said for

10 the court reporter.  I don't want to confuse her.

11    A.    No, it wasn't a loan.

12    Q.    It wasn't a loan.  So what was it?  It

13 was you taking someone else's money.

14         Why did you think you had the right to

15 take someone else's money?

16    A.    I don't think I had the right to take

17 someone else's money.

18    Q.    So then why did you take this money?

19    A.    I have a gambling habit.

20    Q.    An addiction?

21    A.    Yes.

22    Q.    You have a gambling addiction and that

23 made you take out money, over $13,000, that didn't

24 belong to you?

81

KATRINA DOUGLAS, FEBRUARY 28, 2008

1       A.      That would be correct.

2       Q.      And you knew when you took this money out

3  that it didn't belong to you, correct?

4       A.      Correct.

5       Q.      And you gambled all this money away?

6       A.      Correct.

7       Q.      And after you gambled it away, you got a

8  phone call saying that you owed it?

9       A.      Correct.

10       Q.      And you knew it didn't belong to you?

11       A.      Correct.

12       Q.      Who else took money out of that ATM?

13       A.      I don't know.

14       MR. MEIER:  Were there more people there?

15       THE WITNESS:  It was me.

16  BY MS. JONKER:

17       Q.      Was there someone else?

18       A.      With me?

19       Q.      Sure.  Was there someone else with you?

20       A.      No.

21       Q.      Who told you that you could take this

22  money out of the ATM?

23       A.      No one told me.

24       Q.      So all by yourself, you walked up to this

1   ATM and took out over $13,000?  You didn't talk to

2   anyone else about it?  Nobody else told you about it?

3       A.    No.

4       Q.    What made you think you could take out

5   over $13,000?  Most ATM's have limits on how much you

6   can take out.

7       A.    I take it it was a malfunction in the ATM

8   machine.

9       Q.    So you took advantage of this malfunction

10  and just kept taking money out?

11      A.    Thinking that I would be able to replace

12  it.

13      Q.    How did you think you were going to

14  replace it?

15      A.    Winning the money back.

16      Q.    You thought you were going to win more

17  than $13,000 back?

18      A.    Yes.  Over the four-day weekend when I

19  took the money, yes.

20      Q.    But you lost it all?

21      A.    Yes, I did.

22      Q.    This wasn't the first time that you had

23  gambled, was it?

24      A.    No.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1          Q.     And you had lost quite a bit of money

2    before this, gambling, hadn't you?

3          A.     No, not that type of money.

4          Q.     How much had you lost prior to this day,

5    this weekend?  How much money had you lost gambling?

6          MR. MEIER:  On what particular occasion,

7    Counsel?

8          MS. JONKER:  I'm talking generally.

9    BY MS. JONKER:

10         Q.     Prior to this weekend, how much money had

11   you lost gambling?

12         MR. MEIER:  Over 12 months?

13   BY THE WITNESS:

14         A.     Over what period of time?

15   BY MS. JONKER:

16         Q.     Your lifetime --

17         A.     Over my lifetime?

18         Q.     -- going to casinos, how much money have

19   you lost?

20         A.     In my lifetime?

21         Q.     Yeah.  In your lifetime.

22         A.     I can't begin to give an answer for that

23   one.

24         Q.     Because it's quite a bit?  I mean, you're

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    claiming here in your bankruptcy petition that you

2    lost over $5500 just in the year prior.

3         A.    Yes.

4         Q.    In the year before that, how much did you

5    lose then?

6         A.    I don't know.

7         Q.    More than 5500?

8         A.    Could be less.

9         Q.    But you don't know?

10        A.    I don't know.

11        Q.    But you thought you could take out close

12   to $14,000 and still be able to pay it all back, and

13   it wasn't even your money?

14        MR. MEIER:  Objection.  We don't even know if

15   14,000 came out of there.  We know that that's what

16   Certegy is trying to collect from her, but we don't

17   know --

18        MS. JONKER:  She already testified that she

19   took this amount out.  We'll read it back from the

20   deposition.

21        MR. MEIER:  If you recall the deposition, she

22   said, I can't verify that that was the amount.

23        MS. JONKER:  She never said that.  She

24   testified that she kept taking money out until she

KATRINA DOUGLAS, FEBRUARY 28, 2008

1  had taken out over $13,000.  That doesn't belong to

2  her.

3  BY MS. JONKER:

4      Q.    And you thought that you could replace it

5  all?  Despite your gambling addiction and your

6  previous losses?

7      A.    Yes.

8      Q.    And you haven't replaced any of it, have

9  you?

10     A.    They stopped calling.

11     Q.    You haven't paid any of this debt, have

12  you?

13     A.    No.

14     MS. JONKER:  No more questions.

15                    EXAMINATION

16  BY MR. MEIER:

17     Q.    Ms. Douglas, after we contacted your

18  attorney, Mr. Borges, and you informed him of this

19  lawsuit, were they going to do -- what did

20  they decide -- what were they going to do to your

21  petition?

22     A.    I'm not sure if I understand your

23  question.

24     Q.    Were they going to make any changes to

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    your petition once they learned of this lawsuit?

2          A.    Yes.

3          Q.    What changes were they going to make to

4    your petition?

5          A.    They were going to amend it.

6          Q.    To add this lawsuit?

7          A.    Yes.

8          Q.    How many collection agencies -- you've

9    testified that a lot of collection agencies have

10   called you.

11               How many of them threatened you with

12   legal action?

13         A.    None.

14         Q.    None?  Except this one?

15         A.    Except this one, correct.

16         Q.    And you said it scared you?

17         A.    Yes.

18         Q.    How bad did it scare you?

19         A.    I didn't know if I was going to go to

20   jail.  I didn't know what they were going to do.

21         Q.    When they said "legal action," what did

22   you think that meant?

23         A.    That they could put me in jail.

24         Q.    That who could put you in jail?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1       A.      The collection agency can hire an
2  attorney to prosecute me.
3       Q.      And this caused you to be scared?
4       A.      Yes, it did.
5       Q.      How scared were you -- I mean, how --
6  what did you do because -- how is this different --
7  you testified you were scared when Beneficial called
8  you before.  Or one of the other agencies.  I think
9  it was Beneficial.
10           You were also scared when Certegy called
11  you.  What was different?
12       A.      Because Certegy told me to go to the
13  Gaming Commissioner.
14       Q.      And what did you think that meant?
15       A.      It scared me.  I didn't know what they
16  were going to do.
17       MR. MEIER:  Thank you.  No further questions.
18       MS. JONKER:  I just have a couple followup
19  questions.
20                     FURTHER EXAMINATION
21  BY MS. JONKER:
22       Q.      You said that during this conversation on
23  August 6 with Certegy, this person named Jennifer
24  told you to call the Gaming Commissioner?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.    Correct.

 2        Q.    The Indiana Gaming Commissioner?

 3        A.    Correct.

 4        Q.    And you said that scared you?

 5        A.    Correct.

 6        Q.    Because you knew that you had taken over

 7  $13,000 that didn't belong to you, correct?

 8        A.    Correct.

 9        Q.    What changes to your petition was your

10  Attorney Borges supposed to make?

11        A.    They supposed to amend.

12        Q.    Amend the petition?

13        A.    I'm not exactly sure of the terminology

14  what they do, but she said she would amend the

15  bankruptcy.

16        Q.    Why would she amend it?  To include what?

17        A.    The lawsuit.

18        Q.    When did she say she was going to do

19  that?

20        A.    The last conversation I had with her.

21        Q.    When was that?

22        A.    I don't have an exact date, but it was in

23  February of this year.

24        Q.    The first week of February?  The second
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    week of February?  The third week of February?  It's

2    February 28 today, so there's only a couple of weeks

3    here.

4            A.      I think it was the second week.

5            Q.      Have they amended it?

6            A.      I haven't spoken to them.

7            Q.      Why not?

8            A.      Because she said she was going to amend

9    it.

10           Q.      And she hasn't, correct?

11           A.      I don't know.

12           Q.      But you haven't talked to her to follow

13   up?

14           A.      No, not yet.

15           Q.      Why did she decide to amend it?

16           A.      Why did -- I asked her to.

17           Q.      You're referring to Molly?

18           A.      Yes.

19           Q.      Why did you ask her to amend it?

20           A.      So I guess it's part of the procedures

21   that you do.

22           Q.      What makes you think that?

23           A.      I spoke to my attorney, Richard.

24           Q.      The one that's here today?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        A.    Yes.

2        Q.    And after speaking to him, you believed

3   that your bankruptcy petition should be amended?

4        MR. MEIER:  I'm going to object.  That's

5   privileged.

6        MS. JONKER:  She already testified that she

7   spoke to you about this.

8        MR. MEIER:  Yes, but the contents of it.

9        MS. JONKER:  I'm not asking about it.

10  BY MS. JONKER:

11       Q.    I'm asking, it was your understanding,

12  after talking to Richard, that your bankruptcy

13  petition needed to be amended?

14       A.    Correct.

15       Q.    To include this lawsuit?

16       A.    If that's what it means to do.

17       Q.    I'm sorry.  Could you repeat that?

18       A.    If that's what it means to do, amending

19  it.

20       Q.    When did you talk to Richard about that?

21       A.    This month.

22       Q.    When this month?

23       A.    I don't have the exact date.

24       Q.    Give me an approximation.  Which week?

KATRINA DOUGLAS, FEBRUARY 28, 2008

```
 1        A.    The second or third week of this month.
 2        Q.    Did you show your bankruptcy petition to
 3  Richard?
 4        A.    No, I didn't show it to him.
 5        Q.    How did he know to tell you to amend it
 6  then?
 7        A.    I told him.
 8        Q.    Told him what?
 9        A.    That I was filing bankruptcy with
10  Ernesto.
11        Q.    And what did he say?
12        MR. MEIER:   Now you're asking about contents of
13  attorney-client privilege.
14        MS. JONKER:   This only helps you.
15  BY MS. JONKER:
16        Q.    What did he say?
17        A.    That I should have it amended.
18        Q.    Why?  Did he give you a reason?
19        A.    I don't recall what the reason was.
20        Q.    So he just said "amend your petition,"
21  and didn't tell you what to amend or anything?
22        A.    I don't recall what the reason was.
23        Q.    Was it because you didn't include your
24  lawsuit?
```

KATRINA DOUGLAS, FEBRUARY 28, 2008

1        A.    That could be.

2        Q.    Was there something else that he told you

3  to amend?

4        A.    No.

5        Q.    It was just to include the lawsuit?

6        A.    If that's what amending means.

7        Q.    Amending just means to make a change.

8        A.    Yes, to make a change.

9        Q.    What was the change?

10       A.    That this was part of the bankruptcy

11 (indicating).

12       Q.    When you say "this," you mean this

13 lawsuit that we're here for today?

14       A.    Right.

15       Q.    Should have been included in the

16 bankruptcy?

17       A.    To make the change.

18       Q.    To include this lawsuit in the bankruptcy

19 petition?

20       A.    Correct.

21       Q.    Okay.

22       A.    If that's what amending is.  To change,

23 right?

24       MR. MEIER:  Yes.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1    BY MS. JONKER:

2        Q.    And that's when you told Mr. Borges about

3    this lawsuit?

4        A.    Yes.

5        MS. JONKER:  No further questions.

6        MR. MEIER:  Did you --

7        MS. JONKER:  Waiving or reading?

8        MR. MEIER:  I would like to clarify one point

9    just to --

10                   FURTHER EXAMINATION

11   BY MR. MEIER:

12       Q.    I also talked to your attorney, correct?

13       A.    Yes.

14       MS. JONKER:  Mr. Borges?

15       MR. MEIER:  Mr. Borges.

16       MS. JONKER:  When?

17       MR. MEIER:  Molly.

18       MS. JONKER:  "Molly."  Is Molly an attorney?

19       MR. MEIER:  She's the one that's handling her

20   petition.

21       MS. JONKER:  Is she an attorney?

22       MR. MEIER:  I don't know that.

23       MS. JONKER:  Is she an assistant to Mr. Borges?

24       MR. MEIER:  Yes.

KATRINA DOUGLAS, FEBRUARY 28, 2008

1      MS. JONKER:  So you spoke to Molly?

2      MR. MEIER:  I spoke to Molly after she gave me

3  the permission to.  Just to find out what was going

4  on with her petition.

5      MS. JONKER:  When was that?

6      MR. MEIER:  First week of February, after I had

7  been contacted, after we spoke.

8      MS. JONKER:  When you say "we," you mean you

9  and the Plaintiff here, Ms. Douglas?

10      MR. MEIER:  Yes.

11      MS. JONKER:  You spoke about her bankruptcy

12  petition?

13      MR. MEIER:  Yes.

14      MS. JONKER:  And that's when she gave you

15  permission to contact the Borges law firm?

16      MR. MEIER:  Yes.

17      MS. JONKER:  And that's when you told the

18  Borges law firm that this lawsuit existed?

19      MR. MEIER:  I told them that they had to amend

20  the petition.

21      MS. JONKER:  To include this lawsuit?

22      MR. MEIER:  Correct.

23      MS. JONKER:  And that was the first time they

24  had heard about this lawsuit?

KATRINA DOUGLAS, FEBRUARY 28, 2008

1          MS. JONKER:   I'm going to hold off.

2               FURTHER DEPONENT SAITH NOT.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF ILLINOIS

 3                      EASTERN DIVISION

 4

 5   KATRINA DOUGLAS,                )

 6                   Plaintiff,      )

 7      -vs-                         )  No. 07 C 6773

 8   CERTEGY PAYMENT RECOVERY        )  Judge Bucklo

 9   SERVICES, INC.,                 )

10                   Defendant.      )

11           I hereby certify that I have read the

12   foregoing transcript of my deposition given at the

13   time and place aforesaid, consisting of Pages 1 to

14   96, inclusive, and I do again subscribe and make oath

15   that the same is a true, correct and complete

16   transcript of my deposition so given as aforesaid,

17   and includes changes, if any, so made by me.

18

19                       KATRINA DOUGLAS

20   SUBSCRIBED AND SWORN TO

21   before me this        day

22   of                 , A.D. 200 .

23

24           Notary Public
```

```
 1    STATE OF ILLINOIS )
 2                      )  SS:
 3    COUNTY OF DU PAGE )
 4            I, V. LINDA BOESCH, a Notary Public within
 5    and for the County of DuPage, State of Illinois, and
 6    a Certified Shorthand Reporter of said state, do
 7    hereby certify:
 8            That previous to the commencement of the
 9    examination of the witness, the witness was duly
10    sworn to testify the whole truth concerning the
11    matters herein;
12            That the foregoing deposition transcript
13    was reported stenographically by me, was thereafter
14    reduced to typewriting under my personal direction
15    and constitutes a true record of the testimony given
16    and the proceedings had;
17            That the said deposition was taken before
18    me at the time and place specified;
19            That I am not a relative or employee or
20    attorney or counsel, nor a relative or employee of
21    such attorney or counsel for any of the parties
22    hereto, nor interested directly or indirectly in the
23    outcome of this action.
24            IN WITNESS WHEREOF, I do hereunto set my
```

1  hand and affix my seal of office at Chicago,

2  Illinois, this 4th day of March, 2008.

3

4

5

6

7        Notary Public, DuPage County, Illinois

8        My commission expires 8-14-2009.

9

10

11  CSR Certificate No. 84-3108.

12

13

14

15

16

17

18        OFFICIAL SEAL
          V. LINDA BOESCH
19   NOTARY PUBLIC STATE OF ILLINOIS
     MY COMMISSION EXPIRES 8-14-2009

20

21

22

23

24

```
1                    I N D E X

2   WITNESS                        EXAMINATION

3   KATRINA DOUGLAS

4        By Ms. Jonker                  3, 87

5        By Mr. Meier                  85, 93

6

7

8

9                 E X H I B I T S

10  NUMBER                      MARKED FOR ID

11  DEPOSITION EXHIBIT

12       No. A                          3

13       No. B                         28

14

15

16

17

18

19

20

21

22

23

24
```

# U.S. Bankruptcy Court
## Northern District of Illinois (Chicago)
## Bankruptcy Petition #: 08-02371

*Assigned to:* Pamela S. Hollis                          *Date Filed:* 02/01/2008
Chapter 13
Voluntary
Asset

**Debtor**                                  represented by **Ernesto D Borges**
**Katrina Douglas**                                        Law Offices of Ernesto
2949 Sussex Ave                                            Borges
Markham, IL 60428                                          105 W Madison Street
SSN: xxx-xx-6608                                           23rd Floor
*fka*                                                      Chicago, IL 60602
**Katrina Taylor**                                         312 853-0200
                                                           Email: notice@borgeslaw.com

**Trustee**
**Marilyn O Marshall**
224 South Michigan Ste 800
Chicago, IL 60604
312-431-1300

**U.S. Trustee**
**William T Neary**
Office of the U.S. Trustee, Region 11
227 W. Monroe Street
Suite 3350
Chicago, IL 60606
312-886-5785

| Filing Date | # | Docket Text |
|---|---|---|
| 02/01/2008 | 1 | Chapter 13 Voluntary Petition Fee Amount $274, Filed by Ernesto D Borges on behalf of Katrina Douglas Government Proof of Claim due by 7/30/2008. Chapter 13 Plan due by 2/19/2008. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 2 | Chapter 13 Plan Filed by Ernesto D Borges on behalf of Katrina Douglas. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 3 | Declaration Re: Electronic Filing Filed by Ernesto D Borges on behalf of Katrina Douglas. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 4 | Chapter 13 Statement of Current Monthly and Disposable Income Filed by Ernesto D Borges on behalf of Katrina Douglas. (Borges, |

EXHIBIT A

FOR I.D. _____

| | | |
|---|---|---|
| | | Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 5 | Statement of Social Security Number(s) Filed by Ernesto D Borges on behalf of Katrina Douglas. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 6 | Certificate of Credit Counseling Filed by Ernesto D Borges on behalf of Katrina Douglas. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/01/2008 | 7 | Meeting of Creditors with 341(a) meeting to be held on 03/10/2008 at 12:00 PM at 224 South Michigan, Suite 800, Chicago, Illinois 60604. Confirmation hearing to be held on 03/31/2008 at 11:00 AM at 219 South Dearborn, Courtroom 644, Chicago, Illinois 60604. Proof of Claim due by 06/09/2008. Objection to Dischargeability due by 05/09/2008. (Borges, Ernesto) (Entered: 02/01/2008) |
| 02/04/2008 | 8 | Request for Chapter 13 341 Meeting of Creditors . (Daniel, Sabrina) (Entered: 02/04/2008) |
| 02/04/2008 | 9 | Receipt of Voluntary Petition (Chapter 13)(08-02371) [misc,volp13a] ( 274.00) Filing Fee. Receipt number 8266952. Fee Amount $ 274.00 (U.S. Treasury) (Entered: 02/04/2008) |
| 02/04/2008 | 10 | BNC Certificate of Service - Meeting of Creditors. (RE: 8 Request for Chapter 13 341 Meeting of Creditors). No. of Notices: 16. Service Date 02/06/2008. (Admin.) (Entered: 02/07/2008) |
| 02/04/2008 | 11 | BNC Certificate of Service - PDF Document. (RE: 2 Chapter 13 Plan). No. of Notices: 23. Service Date 02/06/2008. (Admin.) (Entered: 02/07/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/14/2008 16:17:09 | | | |
| **PACER Login:** | mc1069 | **Client Code:** | 2047610-0008 |
| **Description:** | Docket Report | **Search Criteria:** | 08-02371 Fil or Ent: filed From: 10/17/2007 To: 2/14/2008 Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

B1 (Official Form 1)(1/08)

| United States Bankruptcy Court<br>Northern District of Illinois | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Douglas, Katrina** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**FKA Katrina Taylor** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**xxx-xx-6608** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**2949 Sussex Ave**<br>**Markham, IL**<br>ZIP Code **60428** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Cook** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>■ Chapter 13<br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box)<br>■ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."　☐ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

Estimated Assets

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1)(1/08)                                                                                              Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **Douglas, Katrina** |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: **NDIL** | Case Number: **00-30355** | Date Filed: **10/16/00** |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td><b>Exhibit A</b><br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition.</td>
<td><b>Exhibit B</b><br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X  /s/ Ernesto D. Borges, Jr.         <b>February 1, 2008</b><br>Signature of Attorney for Debtor(s)         (Date)<br><b>Ernesto D. Borges, Jr. 6189298</b></td>
</tr>
</table>

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety? |
| ☐ Yes, and Exhibit C is attached and made a part of this petition. |
| ■ No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.) |
| ■ Exhibit D completed and signed by the debtor is attached and made a part of this petition. |
| If this is a joint petition: |
| ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue** (Check any applicable box) |
|---|
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |
| ☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property** (Check all applicable boxes) |
|---|
| ☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.) |
| _____ (Name of landlord that obtained judgment) |
| _____ (Address of landlord) |
| ☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and |
| ☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. |
| ☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

B1 (Official Form 1)(1/08)                                                                                          Page 3

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Douglas, Katrina** |

<div align="center">

**Signatures**

</div>

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  **/s/ Katrina Douglas**
Signature of Debtor  **Katrina Douglas**

X  _____
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**February 1, 2008**
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X  _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|

X  **/s/ Ernesto D. Borges, Jr.**
Signature of Attorney for Debtor(s)

**Ernesto D. Borges, Jr. 6189298**
Printed Name of Attorney for Debtor(s)

**The Law Offices of Ernesto D, Borges, Jr. P.C.**
Firm Name

**105 West Madison**
**23rd Floor**
**Chicago, IL 60602**

_____
Address

**Email: notice@borgeslaw.com**
**312/853-0200  Fax: 312/853-3130**
Telephone Number

**February 1, 2008**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X  _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

Official Form 1, Exhibit D (10/06)

# United States Bankruptcy Court
## Northern District of Illinois

In re   **Katrina Douglas** _____   Case No. _____

_____   Chapter   **13** _____
Debtor(s)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Must be accompanied by a motion for determination by the court.][Summarize exigent circumstances here.]* ____

**If the court is satisfied with the reasons stated in your motion, it will send you an order approving your request. You must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy case and promptly file a certificate from the agency that provided the briefing, together with a copy of any debt management plan developed through the agency. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. A motion for extension must be filed within the 30-day period. Failure to fulfill these requirements may result in dismissal of your case. If the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing, your case may be dismissed.**

**Official Form 1, Exh. D (10/06) - Cont.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*

☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:     ___/s/ Katrina Douglas_____
                                **Katrina Douglas**

Date:   **February 1, 2008**_____

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Northern District of Illinois

In re    **Katrina Douglas**

Debtor

Case No. _____

Chapter_____ **13**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 115,000.00 | | |
| B - Personal Property | Yes | 3 | 40,359.94 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | 155,971.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 150.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | 34,817.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 2,743.42 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 2,378.00 |
| Total Number of Sheets of ALL Schedules | | 19 | | | |
| Total Assets | | | 155,359.94 | | |
| Total Liabilities | | | | 190,938.00 | |

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## Northern District of Illinois

In re  **Katrina Douglas**

_____,
Debtor

Case No. _____

Chapter_____**13**_____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 150.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 150.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 2,743.42 |
| Average Expenses (from Schedule J, Line 18) | 2,378.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 3,415.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 3,916.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 150.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 34,817.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 38,733.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

B6A (Official Form 6A) (12/07)

In re    **Katrina Douglas**                                                Case No. _____
_____
                              Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Real Estate located at 2949 Sussex Ave., Markham, IL** | **Fee Simple** | - | 115,000.00 | 123,845.00 |

|  | Sub-Total > | 115,000.00 | (Total of this page) |
|---|---|---|---|
|  | Total > | 115,000.00 |  |

__0__  continuation sheets attached to the Schedule of Real Property .

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

In re    **Katrina Douglas**                                                      Case No. _____

                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Checking account w/ Chase Bank | - | 2.00 |
| | | | Savings account w/ Chase Bank | - | 2.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | Miscellaneous used household goods | - | 5,000.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | Personal Used Clothing | - | 400.00 |
| 7. | Furs and jewelry. | | Miscellaneous Costume Jewelry | - | 100.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Term Life Insurance w/ Employer -- no cash surrender value | - | 0.00 |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

|  | Sub-Total > | **5,504.00** |
|---|---|---|
|  | (Total of this page) | |

__2__   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Katrina Douglas**                                          Case No. _____
                                                    ,
                            Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | 401K w/ Employer | - | 6,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | 2 Shares of ADP Stock | - | 80.94 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

Sub-Total >    **6,080.94**
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Katrina Douglas**                                    Case No. _____
_____
                          Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2004 Hyundai Sonata w/ 70,000 miles | - | 8,200.00 |
| | | 2005 Dodge Status -- Debtor is a cosigner | - | 13,175.00 |
| | | 1999 Mitsubishi Eclipse -- debtor is co-signed on the debt. | - | 7,200.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | Personal Computer | - | 200.00 |

Sub-Total >    28,775.00
(Total of this page)
Total >    40,359.94

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B6C (Official Form 6C) (12/07)

In re **Katrina Douglas**                                            Case No. _____

_____
                                                          Debtor

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                                          $136,875.
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| **Real Estate located at 2949 Sussex Ave., Markham, IL** | 735 ILCS 5/12-901 | 15,000.00 | 115,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **Checking account w/ Chase Bank** | 735 ILCS 5/12-1001(b) | 2.00 | 2.00 |
| **Savings account w/ Chase Bank** | 735 ILCS 5/12-1001(b) | 2.00 | 2.00 |
| **Household Goods and Furnishings** | | | |
| **Miscellaneous used household goods** | 735 ILCS 5/12-1001(b) | 3,000.00 | 5,000.00 |
| **Wearing Apparel** | | | |
| **Personal Used Clothing** | 735 ILCS 5/12-1001(a) | 400.00 | 400.00 |
| **Furs and Jewelry** | | | |
| **Miscellaneous Costume Jewelry** | 735 ILCS 5/12-1001(b) | 100.00 | 100.00 |
| **Interests in Insurance Policies** | | | |
| **Term Life Insurance w/ Employer -- no cash surrender value** | 215 ILCS 5/238 | 0.00 | 0.00 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **401K w/ Employer** | 735 ILCS 5/12-704 | 6,000.00 | 6,000.00 |
| **Stock and Interests in Businesses** | | | |
| **2 Shares of ADP Stock** | 735 ILCS 5/12-1001(b) | 80.94 | 80.94 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2004 Hyundai Sonata w/ 70,000 miles** | 735 ILCS 5/12-1001(c) | 2,400.00 | 8,200.00 |

|  | | Total: | 26,984.94 | 134,784.94 |

___0___  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re   **Katrina Douglas**                                                                          Case No. _____

_____
Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | | |
| Account No. xxxxxx6306  **Citifinancial Mortgage** Po Box 140609 Irving, TX 75014 | | - | | | Opened  6/08/06  Last Active  9/29/07  **First Mortgage**  Real Estate located at 2949 Sussex Ave., Markham, IL | | | | | |
| | | | | | Value $                115,000.00 | | | | 123,845.00 | 0.00 |
| Account No. xxxxxxxxxxxx3059  **Dell Financial Services** Po Box 81577 Austin, TX 78708 | | | | | Opened 11/05/02  Last Active 12/18/07  **Purchase Money Security Interest**  **Personal Computer** | | | | | |
| | | | | | Value $                200.00 | | | | 486.00 | 286.00 |
| Account No. xxxxxxxxx8448  **HSBC Auto Finance Bankruptcy Notices** Po Box 17909 San Diego, CA 92177 | | | | | Opened 12/16/04  Last Active 12/14/07  **Purchase Money Security Interest**  **2004 Hyundai Sonata w/ 70,000 miles** | | | | | |
| | | | | | Value $                8,200.00 | | | | 11,103.00 | 2,903.00 |
| Account No. xxxxxxxxxxxx0001  **Toyota Motor Credit** 1111 W 22nd St Ste 420 Oak Brook, IL 60523 | X | - | | | Opened 12/09/04  Last Active 12/18/07  **Lien on Vehicle PMSI**  **1999 Mitsubishi Eclipse -- debtor is co-signed on the debt.** | | | | | |
| | | | | | Value $                7,200.00 | | | | 6,635.00 | 0.00 |
| **_1_**   continuation sheets attached | | | | | Subtotal (Total of this page) | | | | 142,069.00 | 3,189.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re   **Katrina Douglas**                                                          Case No. _____

_____
                                    Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxxxxxx9001<br><br>**Wells Fargo**<br>**Po Box 7648**<br>**Boise, ID 83707** | X | - | **Opened 4/08/06 Last Active 12/06/07**<br><br>**Lien on Vehicle PMSI**<br><br>**2005 Dodge Status -- Debtor is a cosigner**<br><br>Value $          13,175.00 | | | | 13,902.00 | 727.00 |
| Account No. | | | <br><br><br><br>Value $ | | | | | |
| Account No. | | | <br><br><br><br>Value $ | | | | | |
| Account No. | | | <br><br><br><br>Value $ | | | | | |
| Account No. | | | <br><br><br><br>Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  | Subtotal<br>(Total of this page) | 13,902.00 | 727.00 |
|---|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | 155,971.00 | 3,916.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

B6E (Official Form 6E) (12/07)

In re   **Katrina Douglas**                                                          Case No. _____
_____,
                          Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                                        __1__    continuation sheets attached

B6E (Official Form 6E) (12/07) - Cont.

In re   **Katrina Douglas**                                      Case No. _____
                                          Debtor

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY / AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. **6608**<br><br>**Internal Revenue Service**<br>**Official Bankruptcy Address**<br>**PO Box 21126**<br>**Philadelphia, PA 19114-0326** | - | | **2004 and 2005 Income Taxes** | | | | 150.00 | 0.00<br><br>150.00 |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | Subtotal (Total of this page) | 150.00 | 0.00 / 150.00 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 150.00 | 0.00 / 150.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re  **Katrina Douglas**                                                                          Case No. _____

,
Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxxxxx7975 <br><br>**Amer Gen Fin** <br>**3200 W 159th St  U** <br>**Markham, IL 60426** | - | | **Opened 12/01/98 Last Active  5/01/00** <br>**HouseholdGoodsAndOtherCollateralAuto** | | | | **Unknown** |
| Account No. xxxxxx8000 <br><br>**Barclays Bank Delaware** <br>**Customer Care Correspondance** <br>**Po Box 8801** <br>**Wilmington, DE 19899** | | | **Opened  3/22/06 Last Active 11/08/07** <br>**CreditCard** | | | | **623.00** |
| Account No. xxxxxxxxxx9086 <br><br>**Beneficial / Household Finance** <br>**Attn: Bankruptcy Dept** <br>**961 Weigel Dr** <br>**Elmhurst, IL 60126** | - | | **Opened  1/18/06 Last Active 11/05/07** <br>**CheckCreditOrLineOfCredit** | | | | **12,615.00** |
| Account No. xxxxxxxx5928 <br><br>**Capital 1 Bank** <br>**Attn: C/O TSYS Debt Management** <br>**Po Box 5155** <br>**Norcross, GA 30091** | - | | **Opened  5/27/05 Last Active 10/06/07** <br>**CreditCard** | | | | **1,327.00** |
| **3**   continuation sheets attached | | | | | Subtotal <br>(Total of this page) | | **14,565.00** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                          S/N:25653-071221   Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Katrina Douglas**                                        Case No. _____

_____
                        Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxx4630<br><br>**Cashcall Inc**<br>**17360 Brookhurst Street**<br>**Fountain Valley, CA 92708** | - | | **Opened 7/09/07 Last Active 8/01/07**<br>**NoteLoan** | | | | 2,561.00 |
| Account No. xxxxxx2132<br><br>**Cbcs**<br>**Po Box 163250**<br>**Columbus, OH 43216** | - | | **Opened 2/28/07 Last Active 1/01/08**<br>**Collection Ingalls Hospital** | | | | 315.00 |
| Account No. xxxxxxx8497<br><br>**Cbcs**<br>**Po Box 163250**<br>**Columbus, OH 43216** | - | | **Opened 9/05/07 Last Active 1/01/08**<br>**Collection Ingalls Hospital** | | | | 214.00 |
| Account No. x4534<br><br>**Great American Finance**<br>**205 W Wacker Dr**<br>**Chicago, IL 60606** | - | | **Opened 11/22/06 Last Active 10/18/07**<br>**InstallmentLoan** | | | | 1,426.00 |
| Account No. xxxxxxxxxx1257<br><br>**Harrahs Joliet Casino**<br>**C/O TRS Recovery Services, Inc.**<br>**5251 Westheimer**<br>**Houston, TX 77056** | - | | **Line of Credit** | | | | 275.00 |

Sheet no. __1__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                4,791.00

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

B6F (Official Form 6F) (12/07) - Cont.

In re   **Katrina Douglas**                                                    Case No. _____
_____
                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W J C | | | | | | |
| Account No. **xxxxxxxxxx1256** | | | | Line of Credit | | | | |
| **Harrahs Joliet Casino**<br>**C/O TRS Recovery Services, Inc.**<br>**5251 Westheimer**<br>**Houston, TX 77056** | - | | | | | | | 275.00 |
| Account No. **xxx0110** | | | | Opened 10/23/06  Last Active  1/07/08<br>CreditCard | | | | |
| **Hccredit/cit**<br>**203 E Emma Ave Ste A**<br>**Springdale, AR 72764** | - | | | | | | | 134.00 |
| Account No. **4930** | | | | Credit Card or Credit Use | | | | |
| **JUNIPER BANK**<br>**PO BOX 13337**<br>**Philadelphia, PA 19101-3337** | - | | | | | | | 460.00 |
| Account No. **xxxx7098** | | | | Line of Credit | | | | |
| **Majestic Star Company**<br>**1 Buffington Harbor Drive**<br>**Gary, IN 46406** | - | | | | | | | 225.00 |
| Account No. **xxxx7099** | | | | Line of Credit | | | | |
| **Majestic Star Company**<br>**1 Buffington Harbor Drive**<br>**Gary, IN 46406** | - | | | | | | - | 225.00 |
| Sheet no. __2__ of __3__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | | | | | Subtotal<br>(Total of this page) | | | 1,319.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

B6F (Official Form 6F) (12/07) - Cont.

In re  **Katrina Douglas**                                                Case No. _____
                          Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Line of Credit | | | | |
| **Majestic Star Company**<br>**1 Buffington Harbor Drive**<br>**Gary, IN 46406** | | - | | | | | |
| | | | | | | | **13,874.00** |
| Account No. **xxxxxx1452** | | | Opened 5/01/99 Last Active 7/01/02<br>ConventionalRealEstateMortgage | | | | |
| **Option One Mortgage Co**<br>**Po Box 57054**<br>**Irvine, CA 92619** | | - | | | | | |
| | | | | | | | **Unknown** |
| Account No. **xx9833** | | | Medical or Dental Services | | | | |
| **Radiology Imaging**<br>**Attn: Bankruptcy Dept.**<br>**PO Box 1886**<br>**Harvey, IL 60426** | | - | | | | | |
| | | | | | | | **78.00** |
| Account No. **xxxx1093** | | | Payday Loan | | | | |
| **The Money Market**<br>**16009-A S Kedzie Ave**<br>**Markham, IL 60428** | | - | | | | | |
| | | | | | | | **190.00** |
| Account No. | | | | | | | |
| | | | | - | | | - |

Sheet no. __3__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal<br>(Total of this page) | **14,142.00** |
|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | **34,817.00** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

In re    **Katrina Douglas**                                                    Case No. _____
                                    Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature
of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and
complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts,
state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not
disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

**0**
_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

B6H (Official Form 6H) (12/07)

In re    **Katrina Douglas**                                              Case No. _____
                                                                          
                              Debtor

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Cathy Williams-Sye**<br>**4823 W. 157th Apt 16**<br>**Oak Forest, IL 60452**<br>    **Friend** | **Wells Fargo**<br>**Po Box 7648**<br>**Boise, ID 83707** |
| **Jamie Douglas**<br>**2949 Sussex**<br>**Markham, IL 60428**<br>    **Daughter** | **Toyota Motor Credit**<br>**1111 W 22nd St Ste 420**<br>**Oak Brook, IL 60523** |

**0**
_____ continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

B6I (Official Form 6I) (12/07)

In re  **Katrina Douglas**_____     Case No. _____
                                    Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Separated** | RELATIONSHIP(S):<br>**None.** | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Tax Specialist** | |
| Name of Employer | **ADP** | |
| How long employed | **9 Years** | |
| Address of Employer | **209 W. Jackson**<br>**Chicago, IL 60606** | |

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| INCOME: (Estimate of average or projected monthly income at time case filed) | | | | |
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | 3,459.39 | $ | N/A |
| 2. Estimate monthly overtime | $ | 0.00 | $ | N/A |
| 3. SUBTOTAL | $ | 3,459.39 | $ | N/A |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|    a. Payroll taxes and social security | $ | 562.36 | $ | N/A |
|    b. Insurance | $ | 54.75 | $ | N/A |
|    c. Union dues | $ | 0.00 | $ | N/A |
|    d. Other (Specify)  **See Detailed Income Attachment** | $ | 98.86 | $ | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 715.97 | $ | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 2,743.42 | $ | N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | N/A |
| 8. Income from real property | $ | 0.00 | $ | N/A |
| 9. Interest and dividends | $ | 0.00 | $ | N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | N/A |
| 11. Social security or government assistance<br>(Specify): | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 12. Pension or retirement income | $ | 0.00 | $ | N/A |
| 13. Other monthly income<br>(Specify): | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 2,743.42 | $ | N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | $ | 2,743.42 | |

(Report also on Summary of Schedules and, if applicable, on
Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

B6I (Official Form 6I) (12/07)

In re   **Katrina Douglas**                                                      Case No. _____
                                    Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Detailed Income Attachment

**Other Payroll Deductions:**

| | | |
|---|---|---|
| **Personal Plans** | $  28.08 | $  N/A |
| **401K Loan 1** | $  25.11 | $  N/A |
| **401K Loan 2** | $  45.67 | $  N/A |
| **Total Other Payroll Deductions** | $  98.86 | $  N/A |

B6J (Official Form 6J) (12/07)

In re  **Katrina Douglas**                                                    Case No. _____
                                            Debtor(s)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.  The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 1,040.00 |
| a. Are real estate taxes included?  Yes **X**   No ___ | | |
| b. Is property insurance included?  Yes **X**   No ___ | | |
| 2. Utilities:   a. Electricity and heating fuel | $ | 268.00 |
| b. Water and sewer | $ | 75.00 |
| c. Telephone | $ | 55.00 |
| d. Other  **See Detailed Expense Attachment** | $ | 165.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 25.00 |
| 4. Food | $ | 330.00 |
| 5. Clothing | $ | 70.00 |
| 6. Laundry and dry cleaning | $ | 50.00 |
| 7. Medical and dental expenses | $ | 0.00 |
| 8. Transportation (not including car payments) | $ | 200.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 0.00 |
| 10. Charitable contributions | $ | 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renter's | $ | 0.00 |
| b. Life | $ | 0.00 |
| c. Health | $ | 0.00 |
| d. Auto | $ | 100.00 |
| e. Other _____ | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify) _____ | $ | 0.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | $ | 0.00 |
| b. Other _____ | $ | 0.00 |
| c. Other _____ | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| 17. Other _____ | $ | 0.00 |
| Other _____ | $ | 0.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ | 2,378.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

| | | |
|---|---|---:|
| **20. STATEMENT OF MONTHLY NET INCOME** | | |
| a.   Average monthly income from Line 15 of Schedule I | $ | 2,743.42 |
| b.   Average monthly expenses from Line 18 above | $ | 2,378.00 |
| c.   Monthly net income (a. minus b.) | $ | 365.42 |

B6J (Official Form 6J) (12/07)

In re   **Katrina Douglas** _____     Case No. _____
                                    Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Utility Expenditures:**

| | | |
|---|---|---|
| Cable | $ | 90.00 |
| Cell phone | $ | 75.00 |
| **Total Other Utility Expenditures** | $ | 165.00 |

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Northern District of Illinois

In re __Katrina Douglas_____          Case No. _____

                                    Debtor(s)                Chapter __13_____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

       I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __21__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __February 1, 2008_____          Signature   __/s/ Katrina Douglas_____
                                                        **Katrina Douglas**
                                                        Debtor

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (12/07)

# United States Bankruptcy Court
## Northern District of Illinois

In re  **Katrina Douglas** _____  Case No. _____

_____ Debtor(s)  Chapter  **13** _____

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $37,427.00 | **Employment Income -- Estimated 2005** |
| $38,746.00 | **Employment Income -- Estimated 2006** |
| $3,415.00 | **Employment Income -- Estimated 2007/2008 (monthly average)** |

2

**2. Income other than from employment or operation of business**

None
■
State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                   SOURCE

**3. Payments to creditors**

None
■
*Complete a. or b., as appropriate, and c.*

a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
■
b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,475. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None
■
c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None
■
a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None
■
b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

3

**5. Repossessions, foreclosures and returns**

None ■  List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■  a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■  b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■  List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ☐  List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|
| $5500 | **Gambling:** **The Debtor lost $5000 at Majestic Star Casino and $500 at Harrah's Casino.** | 2007 |

4

**9. Payments related to debt counseling or bankruptcy**

None   List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation
☐      concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately
       preceding the commencement of this case.

| NAME AND ADDRESS<br>OF PAYEE | DATE OF PAYMENT,<br>NAME OF PAYOR IF OTHER<br>THAN DEBTOR | AMOUNT OF MONEY<br>OR DESCRIPTION AND VALUE<br>OF PROPERTY |
|---|---|---|
| **Legal Helpers**<br>**444 N. Wells, Ste. 301**<br>**Chicago, IL 60610** | | **$100** |
| **ERNESTO D. BORGES, JR.**<br>**105 WEST MADISON**<br>**23rd Floor**<br>**CHICAGO, IL 60602** | **2008** | **$500 attorney fees** |

**10. Other transfers**

None   a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor,
■      transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors
       filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the
       spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE,<br>RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED<br>AND VALUE RECEIVED |
|---|---|---|

None   b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled
■      trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER<br>DEVICE | DATE(S) OF<br>TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND<br>VALUE OF PROPERTY OR DEBTOR'S INTEREST<br>IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or
■      otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other
       financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds,
       cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must
       include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed,
       unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR<br>DIGITS OF ACCOUNT NUMBER,<br>AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE<br>OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year**
■      immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or
       depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not
       filed.)

| NAME AND ADDRESS OF BANK<br>OR OTHER DEPOSITORY | NAMES AND ADDRESSES<br>OF THOSE WITH ACCESS<br>TO BOX OR DEPOSITORY | DESCRIPTION<br>OF CONTENTS | DATE OF TRANSFER OR<br>SURRENDER, IF ANY |
|---|---|---|---|

5

**13. Setoffs**

None     List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the
■        commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both
         spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

**14. Property held for another person**

None     List all property owned by another person that the debtor holds or controls.
■

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

**15. Prior address of debtor**

None     If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor
■        occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate
         address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
| --- | --- | --- |

**16. Spouses and Former Spouses**

None     If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho,
■        Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the
         commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in
         the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous
or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to,
statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly
owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material,
pollutant, or contaminant or similar term under an Environmental Law

None     a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable
■        or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known,
         the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

None     b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous
■        Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

6

None ■ c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

### 18 . Nature, location and name of business

None ■ a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None ■ b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ■ a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

None ■ b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

None ■ c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

7

None
■
   d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                  DATE ISSUED

**20. Inventories**

None
■
   a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY        INVENTORY SUPERVISOR        DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

None
■
   b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY             NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
RECORDS

**21 . Current Partners, Officers, Directors and Shareholders**

None
■
   a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS        NATURE OF INTEREST        PERCENTAGE OF INTEREST

None
■
   b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS        TITLE        NATURE AND PERCENTAGE
OF STOCK OWNERSHIP

**22 . Former partners, officers, directors and shareholders**

None
■
   a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME        ADDRESS        DATE OF WITHDRAWAL

None
■
   b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS        TITLE        DATE OF TERMINATION

**23 . Withdrawals from a partnership or distributions by a corporation**

None
■
   If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS
OF RECIPIENT,
RELATIONSHIP TO DEBTOR        DATE AND PURPOSE
OF WITHDRAWAL        AMOUNT OF MONEY
OR DESCRIPTION AND
VALUE OF PROPERTY

**24. Tax Consolidation Group.**

None
■
   If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION        TAXPAYER IDENTIFICATION NUMBER (EIN)

8

**25. Pension Funds.**

None
■

If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                        TAXPAYER IDENTIFICATION NUMBER (EIN)

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date **February 1, 2008**                          Signature  **/s/ Katrina Douglas**

                                                                                **Katrina Douglas**
                                                                                Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

## United States Bankruptcy Court
### Northern District of Illinois

In re   **Katrina Douglas** _____     Case No. _____

_____     Chapter   **13**
Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept............................................................. $ _____ **3,500.00**

Prior to the filing of this statement I have received....................................... $ _____ **500.00**

Balance Due.................................................................................................... $ _____ **3,000.00**

2.  $ **274.00** of the filing fee has been paid.

3.  The source of the compensation paid to me was:

    ■ Debtor     □ Other (specify):

4.  The source of compensation to be paid to me is:

    ■ Debtor     □ Other (specify):

5.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    □ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
    **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.  Any post petition motions including the preparing, filing, arguing and appearing.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:   **February 1, 2008** _____     /s/ **Ernesto D. Borges, Jr.** _____
**Ernesto D. Borges, Jr. 6189298**
**The Law Offices of Ernesto D, Borges, Jr. P.C.**
**105 West Madison**
**23rd Floor**
**Chicago, IL 60602**
**312/853-0200  Fax: 312/853-3130**
**notice@borgeslaw.com**

---

RIGHTS AND RESPONSIBILITIES AGREEMENT BETWEEN
CHAPTER 13 DEBTORS AND THEIR ATTORNEYS
(Model Retention Agreement, revised as of May 1, 2007)

Chapter 13 gives debtors important rights, such as the right to keep property that could otherwise be lost through repossession or foreclosure—but Chapter 13 also puts burdens on debtors, such as the burden of making complete and truthful disclosures of their financial situation. It is important for debtors who file a Chapter 13 bankruptcy case to understand their rights and responsibilities in bankruptcy. In this connection, the advice of an attorney is often crucial. Debtors are entitled to certain services from by their attorneys, but debtors also have responsibilities to their attorneys. In order to assure that debtors and their attorneys understand their rights and responsibilities in the Chapter 13 process, the judges of the Bankruptcy Court for the Northern District of Illinois have approved the following agreement, setting out the rights and responsibilities of both debtors in Chapter 13 and their attorneys. By signing this agreement, debtors and their attorneys accept these responsibilities.

***BEFORE THE CASE IS FILED***

THE DEBTOR AGREES TO:

1. Discuss with the attorney the debtor's objectives in filing the case.

2. Provide the attorney with full, accurate and timely information, financial and otherwise, including properly documented proof of income.

THE ATTORNEY AGREES TO:

1. Personally counsel the debtor regarding the advisability of filing either a Chapter 13 or a Chapter 7 case, discuss both procedures (as well as non-bankruptcy options) with the debtor, and answer the debtor's questions.

2. Personally explain to the debtor that the attorney is being engaged to represent the debtor on all matters arising in the case, as required by Local Bankruptcy rule and explain how and when the attorney's fees and the trustee's fees are determined and paid.

3. Personally review with the debtor and sign the completed petition, plan, statements, and schedules, as well as all amendments thereto, whether filed with the petition or later. (The schedules may be initially prepared with the help of clerical or paralegal staff of the attorney's office, but personal attention of the attorney is required for the review and signing.)

4. Timely prepare and file the debtor's petition, plan, statements, and schedules.

5. Explain to the debtor how, when, and where to make all necessary payments, including both payments that must be made directly to creditors and payments that must be made to the Chapter 13 trustee, with particular attention to housing and vehicle payments.

6. Advise the debtor of the need to maintain appropriate insurance.

### AFTER THE CASE IS FILED

#### THE DEBTOR AGREES TO:

1. Make the required payments to the trustee and to whatever creditors are being paid directly, or, if required payments cannot be made, to notify the attorney immediately.

2. Appear punctually at the meeting of creditors (also called the "341 meeting") with recent proof of income and a picture identification card. (If the identification card does not include the debtor's social security number, the debtor will also bring to the meeting a social security card.) The debtor must be present in time for check-in and when the case is called for the actual examination.

3. Notify the attorney of any change in the debtor's address or telephone number.

4. Inform the attorney of any wage garnishments or liens or levies on assets that occur or continue after the filing of the case.

5. Contact the attorney immediately if the debtor loses employment, has a significant change in income, or experiences any other significant change in financial situation (such as serious illness, marriage, divorce or separation, lottery winnings, or an inheritance).

6. Notify the attorney if the debtor is sued or wishes to file a lawsuit (including divorce).

7. Inform the attorney if any tax refunds to which the debtor is entitled are seized or not received when due from the IRS or Illinois Department of Revenue.

8. Contact the attorney before buying, refinancing, or selling real property, and before entering into any loan agreement.

9. Supply the attorney with copies of all tax returns filed while the case is pending.

#### THE ATTORNEY AGREES TO:

1. Advise the debtor of the requirement to attend the meeting of creditors, and notify the debtor of the date, time, and place of the meeting.

2. Inform the debtor that the debtor must be punctual and, in the case of a joint filing, that both spouses must appear at the same meeting.

Software Copyright (c) 1996-2007 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

3. Provide knowledgeable legal representation for the debtor at the meeting of creditors (in time for check-in and the actual examination) and, unless excused by the trustee, for the confirmation hearing.

4. If the attorney will be employing another attorney to attend the 341meeting or any court hearing, personally explain to the debtor in advance, the role and identity of the other attorney and provide the other attorney with the file in sufficient time to review it and properly represent the debtor.

5. Timely submit to the Chapter 13 trustee properly documented proof of income for the debtor, including business reports for self-employed debtors.

6. Timely respond to objections to plan confirmation and, where necessary, prepare, file, and serve an amended plan.

7. Timely prepare, file, and serve any necessary statements, amended statements and schedules and any change of address, in accordance with information provided by the debtor.

8. Monitor all incoming case information (including, but not limited to, Order Confirming Plan, Notice of Intent to Pay Claims, and 6-month status reports) for accuracy and completeness. Contact the trustee promptly regarding any discrepancies.

9. Be available to respond to the debtor's questions throughout the term of the plan.

10. Prepare, file, and serve timely modifications to the plan after confirmation, when necessary,including modifications to suspend, lower, or increase plan payments.

11. Prepare, file, and serve necessary motions to buy or sell property and to incur debt.

12. Object to improper or invalid claims.

13. Timely respond to the Chapter 13 trustee's motions to dismiss the case, such as for payment default, or unfeasibility, and to motions to increase the percentage payment to unsecured creditors.

14. Timely respond to motions for relief from stay.

15. Prepare, file, and serve all appropriate motions to avoid liens.

16. Provide any other legal services necessary for the administration of the case.

17. In the event that the case is converted to Chapter 7, provide any other legal services which may be necessary consistent with the attorney's responsibilities under Local Bankruptcy Rule 2090-5, with such additional fees as may be appropriate.

Software Copyright (c) 1996-2007 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037 Best Case Bankruptcy

## *ALLOWANCE AND PAYMENT OF ATTORNEYS' FEES*

1. Any attorney retained to represent a debtor in a Chapter 13 case is responsible for representing the debtor on all matters arising in the case unless otherwise ordered by the court. For all of the services outlined above, the attorney will be paid a fee of

$ __3,500.00__

In extraordinary circumstances, such as extended evidentiary hearings or appeals, the attorney may apply to the court for additional compensation for these services. Any such application must be accompanied by an itemization of the services rendered, showing the date, the time expended, and the identity of the attorney performing the services. The debtor must be served with a copy of the application and notified of the right to appear in court to object.

2. *Early termination of the case.* Fees payable under the provisions set out above are not refundable in the event that the case is dismissed, unless the dismissal is due to a failure by the attorney to comply with the duties set out in this agreement. If a dismissal is due to such a failure by the attorney, the court may order a refund of fees on motion by the debtor.

3. *Retainers.* The attorney may receive a retainer or other payment before filing the case, but may not receive fees directly from the debtor after the filing of the case. In any application for fees, whether or not requiring an itemization, the attorney shall disclose to the court any fees paid by the debtor prior to the case filing.

4. *Improper conduct by the attorney.* If the debtor disputes the sufficiency or quality of the legal services provided or the amount of the fees charged by the attorney, the debtor may file an objection with the court and request a hearing.

5. *Improper conduct by the debtor.* If the attorney believes that the debtor is not complying with the debtor's responsibilities under this agreement or is otherwise not engaging in proper conduct, the attorney may apply for a court order allowing the attorney to withdraw from the case.

6. *Discharge of the attorney.* The debtor may discharge the attorney at any time.

Date: __February 1, 2008__

Signed:

| /s/ Katrina Douglas | /s/ Ernesto D. Borges, Jr. |
|---|---|
| Katrina Douglas | Ernesto D. Borges, Jr. 6189298 |
| | Attorney for Debtor(s) |

Debtor(s)
*Do not sign if the fee amount at top of
this page is blank.*

4

B 201 (04/09/06)

UNITED STATES BANKRUPTCY COURT
**NORTHERN DISTRICT OF ILLINOIS**

**NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
OF THE BANKRUPTCY CODE**

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

**1. Services Available from Credit Counseling Agencies**

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses.

**2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors**

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)**
1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**
1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

B 201 (04/09/06)

**Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)**
Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)**
Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

### 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

<div align="center">

**Certificate of Attorney**
I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

</div>

| | | |
|---|---|---|
| **Ernesto D. Borges, Jr. 6189298** | X **/s/ Ernesto D. Borges, Jr.** | **February 1, 2008** |
| Printed Name of Attorney | Signature of Attorney | Date |

Address:
**105 West Madison**
**23rd Floor**
**Chicago, IL 60602**
**312/853-0200**

<div align="center">

**Certificate of Debtor**
I (We), the debtor(s), affirm that I (we) have received and read this notice.

</div>

| | | |
|---|---|---|
| **Katrina Douglas** | X **/s/ Katrina Douglas** | **February 1, 2008** |
| Printed Name(s) of Debtor(s) | Signature of Debtor | Date |

| | | |
|---|---|---|
| Case No. (if known) _____ | X _____ | _____ |
| | Signature of Joint Debtor (if any) | Date |

# United States Bankruptcy Court
## Northern District of Illinois

In re    **Katrina Douglas**
Debtor(s)

Case No.
Chapter    **13**

# VERIFICATION OF CREDITOR MATRIX

Number of Creditors:    **21**

The above-named Debtor(s) hereby verifies that the list of creditors is true and correct to the best of my (our) knowledge.

Date:    **February 1, 2008**

**/s/ Katrina Douglas**
**Katrina Douglas**
Signature of Debtor

Amer Gen Fin
3200 W 159th St  U
Markham, IL 60426


Barclays Bank Delaware
Customer Care Correspondance
Po Box 8801
Wilmington, DE 19899


Beneficial / Household Finance
Attn: Bankruptcy Dept
961 Weigel Dr
Elmhurst, IL 60126


Capital 1 Bank
Attn: C/O TSYS Debt Management
Po Box 5155
Norcross, GA 30091


Cashcall Inc
17360 Brookhurst Street
Fountain Valley, CA 92708


Cbcs
Po Box 163250
Columbus, OH 43216


Certegy Payment
11601 Roosevelt Boulevard
Saint Petersburg, FL 33716


Citifinancial Mortgage
Po Box 140609
Irving, TX 75014


Dell Financial Services
Po Box 81577
Austin, TX 78708


Great American Finance
205 W Wacker Dr
Chicago, IL 60606

Harrahs Joliet Casino
C/O TRS Recovery Services, Inc.
5251 Westheimer
Houston, TX 77056


Hccredit/cit
203 E Emma Ave Ste A
Springdale, AR 72764


HSBC Auto Finance
Bankruptcy Notices
Po Box 17909
San Diego, CA 92177


Internal Revenue Service
Official Bankruptcy Address
PO Box 21126
Philadelphia, PA 19114-0326


JUNIPER BANK
PO BOX 13337
Philadelphia, PA 19101-3337


Majestic Star Company
1 Buffington Harbor Drive
Gary, IN 46406


Option One Mortgage Co
Po Box 57054
Irvine, CA 92619


Radiology Imaging
Attn: Bankruptcy Dept.
PO Box 1886
Harvey, IL 60426


The Money Market
16009-A S Kedzie Ave
Markham, IL 60428


Toyota Motor Credit
1111 W 22nd St Ste 420
Oak Brook, IL 60523

Wells Fargo
Po Box 7648
Boise, ID 83707



